IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SANJAY SOOKUL, individually and on behalf of all
others similarly situated,

                                Plaintiff,

               -against-

FRESH CLEAN THREADS INC.,

                                Defendant.
------------------------------------------------------------------X

Case No.: 1:23-cv-10164-GHW

DEFENDANT'S MOTION TO
DISMISS AMENDED
COMPLAINT AND
INCORPORATED
<u>MEMORANDUM OF LAW</u>

       Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant, Fresh

Clean Threads Inc. ("FCT"), by and through its undersigned counsel, files this Motion to Dismiss

the Amended Complaint, Doc. 11 (the "Amended Complaint") filed by Plaintiff, Sanjay Sookul

("Plaintiff"). For the reasons stated in the incorporated memorandum of law, FCT asks this Court

to dismiss the Amended Complaint in its entirety.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 1

INCORPORATED MEMORANDUM OF LAW ............................................................ 2

   I.    Plaintiff's Claims Are Not Justiciable Because Plaintiff Lacks Standing. ......................... 2

   II.   Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted Under Title III of

   the ADA. ............................................................................................................................. 6

   III.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's State and Local Law

   Claims and These Claims Are Legally Deficient.................................................................. 16

   CONCLUSION......................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Acheson Hotels, LLC v. Laufer*, 144 S. Ct. 18, 25 (2023) ............................................................. 3

*Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017)............... 11, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 6, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................... 7

*BSA v. Dale*, 530 U.S. 640 (2000) ............................................................... 10

*Burbon v. Needlepaint LLC*, No. 21-CV-1678 (EK) (RER), 2022 U.S. Dist. LEXIS 63467, at *11,
   2022 WL 21781622 (E.D.N.Y. Apr. 5, 2022)........................................................... 12

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ............................................ 2, 3, 5

*Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)........................................................ 7

*Campos v. Aegis Realty Mgmt. Corp.*, 2020 U.S. Dist. LEXIS 14138, at *8, 2020 WL 433356
   (S.D.N.Y. Jan. 28, 2020) ............................................................... 4

*Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England*,
   37 F.3d 12 (1st Cir. 1994)........................................................... 11, 14

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)................................................. 2

*Chalas v. Pork King Good*, No. 22-cv-03894 (ER), 2023 U.S. Dist. LEXIS 79100, at *10, 2023
   WL 3293639 (S.D.N.Y. May 5, 2023) .................................................. 16

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.,* 790 F.3d 411, 416-17 (2d Cir. 2015) .......... 2

*County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 195 (2d Cir. 2001)............. 15

*Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 765 (S.D.N.Y. 2020)..... 2, 3, 4, 5, 17

*Eisner v. Cardozo*, 684 F. App'x 29, 32 (2d Cir. 2017) ............................................................ 16

*Flast v. Cohen*, 392 U.S. 83, 98 (1968) .................................................. 2

*Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998) ................................. 7, 9, 10

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1274-77 (11th Cir. 2021).................................. 8, 9

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ......................................... 16

*Guerrero v. Ellusionist.Com, Inc.*, No. 22-cv-2465 (ER), 2023 U.S. Dist. LEXIS 97870, at *10,

    2023 WL 3847402 (S.D.N.Y. June 6, 2023)............................................................................ 16

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ............................................. 3, 6

*Kane v. Blueprint Test Preparation LLC*, No. CV 19-3024 (SJF) (AKT), 2020 U.S. Dist. LEXIS

    155358, at *27-28 (E.D.N.Y. Aug. 24, 2020) ........................................................................ 16

*Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1234 (11th Cir. 2021) ...................................... 3

*Laufer v. Looper*, 22 F.4th 871, 877-78 (10th Cir. 2022) .............................................................. 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ............................................................ 2

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 533-36 (5th Cir. 2016).......... passim

*Martinez v. Mylife.com, Inc.*, No. 21-cv-4779 (BMC), 2021 U.S. Dist. LEXIS 210585, at *4, 2021

    WL 5052745 (E.D.N.Y. Nov. 1, 2021) .................................................................... 9, 10, 12, 13

*Mendez v. Apple Inc.,* 2019 U.S. Dist. LEXIS 110640, at *9, 2019 WL 2611168 (S.D.N.Y. Mar.

    28, 2019)............................................................................................................................... 4, 16

*Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015).................................. 11

*Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) .................................. 8

*Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 437, 439-40 (2d Cir. 2011)......... 16

*Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 33, (2d Cir. 1999)............................. 10, 11, 13, 14

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ........................... 7, 9, 10, 13

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) .................................................................. 10

*Rendon v. Valleycrest Prods.*, 294 F.3d 1279, 1282 (11th Cir. 2002)........................................ 8, 9

i

*Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 17 (S.D.N.Y. 2022) .............................. 11, 14

*Sookul v. Bry's Comics, Inc.*, No. 23-Civ.-2394 (JPC) 2023 U.S. Dist. LEXIS 93884, at *3
    (S.D.N.Y. May 26, 2023) ........................................................................................... 12

*Stoutenborough v. National Football League, Inc.*, 59 F.3d 580 (6th Cir. 1995), ...................... 10

*Sullivan v. Bdg Media*, 71 Misc. 3d 863, 872, 146 N.Y.S.3d 395, 403 (Sup. Ct. NY Cty. 2021) 17

*Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 584-5 (S.D.N.Y. 2022) ..................... 5

*Toro v. Merdel Game Mfg. Co.*, No. 22-Civ.-8505 (JPC), 2023 U.S. Dist. LEXIS 23215, at *3
    (S.D.N.Y. Feb. 10, 2023) ........................................................................................... 12

*United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct. 1723, 1731 (2011) ............ 8

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000) ............ 8, 9

*Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 183 (E.D.N.Y. 2021) ............................. passim

*Yates v. United States*, 574 U.S. 528, 543 (2015) ..................................................................... 8, 10

**Statutes**

28 U.S.C. § 1367 ......................................................................................................................... 16

Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq* ................................................. passim

New York City Human Rights Law .............................................................................................. 17

New York State Civil Rights Law ................................................................................................. 17

New York State Human Rights Law ............................................................................................. 17

**Other Authorities**

Federal Rules of Civil Procedure

    12(b)(1) ............................................................................................................... 2, 6, 18

    12(b)(6) ...................................................................................................................... 18

    12(h)(3) ...................................................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiff brings a claim for disability discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("Title III" or the "ADA") and alleges that he is unable to fully experience FCT's website. Plaintiff claims that this is a violation of the ADA, but he has failed to state a claim against FCT as it is not subject to Title III requirements as an exclusively online retailer. Additionally, any claim, even if well pled, is not justiciable as a matter of law. Plaintiff lacks standing to bring his claims because the copy-and-paste allegations of the Amended Complaint do not plausibly allege Plaintiff suffered an injury in fact. Furthermore, this Court lacks subject matter jurisdiction over Plaintiff's New York state and city law claims and such claims are deficient as a matter of law. Thus, Plaintiff's Amended Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

FCT is an online retailer that sells apparel to consumers. FCT does not have physical stores or other locations accessible to the public and instead operates entirely though its website, www.freshcleantees.com (the "Website"). Plaintiff is visually impaired and uses a screen reader to interact with the internet. Doc. 11 at ¶ 16. Plaintiff alleges that he encountered accessibility barriers on the Website. Doc. 11 at ¶¶ 34, 38. Based on the alleged inability to access the Website, Plaintiff filed his Complaint on November 20, 2023 asserting that FCT discriminates against him in violation of Title III and equivalent state and local laws.

On November 28, 2023, FCT submitted a pre-motion letter pursuant to this Court's practices asking to move to dismiss the Complaint for lack of standing and failure to state a claim. Doc. 6. A pre-motion conference was held December 20, 2023, where Plaintiff stated his intent to file an amended complaint, and the Court granted leave to do so. Doc 10. On January 22, 2024,

Plaintiff filed his Amended Complaint. Doc. 11. FCT filed a renewed pre-motion letter, and the Court held a pre-motion conference on February 9, 2024. The Court granted FCT leave to file this Motion to Dismiss (Doc. 15) and for the reasons stated herein FCT asks this Court to dismiss the Amended Complaint.

## INCORPORATED MEMORANDUM OF LAW

### I.    Plaintiff's Claims Are Not Justiciable Because Plaintiff Lacks Standing.

Issues of justiciability and standing are properly brought before the court using Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,* 790 F.3d 411, 416-17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the . . . plaintiff lacks constitutional standing to bring the action."). "Standing is an aspect of justiciability" and therefore must be present for a matter to be properly before this Court. *Flast v. Cohen*, 392 U.S. 83, 98 (1968). "[T]he elements of Article III standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . .'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Standing under Title III requires (1) the plaintiff allege a past injury under the ADA, (2) it be reasonable to infer the discriminatory conduct would continue, and (3) it is reasonable to infer from the pleadings that plaintiff intends to return to the subject business. *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 765 (S.D.N.Y. 2020) (Woods, J.), *aff'd sub nom Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022).

The Supreme Court recently reinforced that standing requires violations of individual's rights, not merely "harm to his and every citizen's interest in proper application of the . . . laws." *Acheson Hotels, LLC v. Laufer*, 144 S. Ct. 18, 25 (2023) (Thomas, J., concurring).

The Second Circuit holds that a Title III plaintiff "must show that he has an 'interest in using the information [on an allegedly inaccessible website] . . . beyond bringing [his] lawsuit.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *Laufer v. Looper*, 22 F.4th 871, 877-78 (10th Cir. 2022)). The Second Circuit also held that a plaintiff lacked standing to obtain prospective relief when he alleged only vague and conclusory statements regarding his intent to patronize the allegedly discriminatory business in the future. *Id.* (citing *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1234 (11th Cir. 2021)).

Conclusory allegations of injury are insufficient and cannot be used to fabricate standing where none otherwise exists. *Banana Republic*, 613 F. Supp. 3d, at 765-66. Indeed, this Court's dismissal of multiple conclusory ADA claims for lack of standing has been upheld by the Second Circuit. *See Calcano*, 36 F.4th 68. In doing so the Second Circuit explained

> In particular, the focus of the third factor—i.e., intent to return based on past visits and proximity—is to ensure that the risk of harm is sufficiently imminent and substantial to establish standing. Thus, the central inquiry is not whether a complaint pleads the magic words that a plaintiff "intends to return," but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury.
>
> Although we generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue. Assessing plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. We need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement. Instead, we must refer to a complaint's factual context to discern whether to accept a complaint's conclusory statements.

*Calcano*, 36 F.4th 68, 74-75 (cleaned up).

Importantly, this Court "cannot ignore the broader context of Plaintiff's transparent cut-and-paste and fill-in-the-blank pleadings." *Id.* at 77. "This backdrop of Plaintiff's Mad-Libs-style complaints further confirms the implausibility of their claims of injury." *Id.* "Or, more pithily: 'There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical. But those who live by the photocopier shall die by the photocopier.'" *Banana Republic*, 613 F. Supp. 3d, at 766 (quoting *Mendez v. Apple Inc.*, No. 18 CIV. 7550 (LAP), 2019 U.S. Dist. LEXIS 110640, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019)).

Plaintiff does not claim to have ever purchased anything from the Website, nor has Plaintiff provided more than conclusory allegations that he has some theoretical interest in making a purchase from the Website. True, Plaintiff pleads that FCT sells apparel on the Website. But mere awareness of the product offerings of a retailer does not indicate an intent to purchase those products from that retailer. The pure mental conception that one might make a purchase, even of identifiable products, from a retailer does not result in an injury supporting standing, nor does it evidence that Plaintiff is a would-be patron of FCT.

Plaintiff latches onto the knowledge of FCT's offerings to craft a few conclusory statements that Plaintiff has a desire to purchase clothing. This Court must determine whether these are plausible allegations which convey standing. Use of this Court's judicial experience and common sense says no.

Plaintiff is a prolific litigant, having filed approximately 60 Title III cases in this District since January 2023.[1] Plaintiff's complaints follow a predictable track: name a defendant with a

---

[1] This Court is free to take judicial notice of these other pending cases in this District and the pleadings and submissions therein. *E.g.*, *Campos v. Aegis Realty Mgmt. Corp.*, 2020 U.S. Dist. LEXIS 14138, at *8, 2020 WL 433356 (S.D.N.Y. Jan. 28, 2020) (citing authority). It is appropriate to consider matters subject to judicial notice in ruling on a motion

retail website, identify alleged problems on the website, and assert the same claims for relief found in this action. Many of these complaints are boilerplate, with only the names and website addresses of defendants and a few token references regarding the goods sold by the defendant differentiating them. These nearly identical actions routinely fail to allege that Plaintiff ever had anything more than a conception to patronize the websites and retailers at issue.

Plaintiff has, perhaps at this Court's suggestion in *Banana Republic*, inserted allegations about products sold by FCT. Doc. 11 ¶¶ 38-40. Review of Plaintiff's pleadings in other cases demonstrates the formulaic nature of these allegations. The repetition across cases of "Plaintiff is still interested in purchasing the [good] as he still wants to [token use of good]" is the type of Mad-Libs pleading the Second Circuit referenced in *Calcano*. Such allegations are an attempt at saying a set of magic words that will grant standing. Unfortunately for Plaintiff, simple recitations of elements of a claim fall below the pleading standards in federal courts.

Similarly, Plaintiff asserts that he will "unequivocally" visit the Website again. Doc. 11 ¶ 40. Again, Plaintiff hopes that parroting language regarding Title III standing will save his Amended Complaint, "[b]ut these assertions are nothing more than legal conclusion[s] couched as . . . factual allegation[s]." *Calcano*, 36 F.4th, at 76 (quotations omitted). Accordingly, this Court does not need to give these conclusory allegations any weight.

Other factual context also weighs against Plaintiff. He claims to have visited the Website three times, one of which occurred after the filing of the Complaint in this action. Doc. 11 ¶ 38. This does not establish a factual history of patronage of the Website or Plaintiff's desire to purchase FCT's products. It far more resembles the vague allegations of Plaintiff's relation with a retailer which this Court found wanting in *Banana Republic*. 613 F. Supp. 3d, at 766. The close timing

---

to dismiss. *See id.*, *see also Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 584-5 (S.D.N.Y. 2022) (Woods, J.).

between Plaintiff's visits to the Website and his commencement of litigation—in both this case and other actions by Plaintiff in this District—merits asking whether Plaintiff is visiting websites to shop for products or lawsuits.

This pattern of behavior is far more indicative of an ADA tester than an aggrieved consumer, and the Second Circuit clearly forecloses standing to mere testers. *See Harty*, 28 F.4th, at 443. Indeed, Plaintiff spends the bulk of the non-boilerplate portion of his complaints highlighting the alleged accessibility barriers on the websites at issue rather than discussing his own interest in the defendant's wares. It is entirely unclear what purpose such an extensive catalog of alleged defects would have beyond use in litigation. That Plaintiff used his three visits (again, one of said visits occurring after this case was filed) to the Website to amass such a catalog suggests that Plaintiff's interest has never been in patronizing FCT, but rather in targeting a potential ADA defendant and building evidence for a lawsuit.

In sum, Plaintiff's barebones allegations of interest in the Website fall apart in the face of their context. Plaintiff's Amended Complaint offers no concrete injury beyond a formulaic set of allegations that with minimal adjustments could be leveled at any commercial website. Plaintiff has tried to track the language of Title III standing, but these allegations are not magic words that allow him to escape the burden of showing plausible injury. Considering Plaintiff's cut-and-paste litigation tactics and conclusory attempts to establish standing across dozens of suits, this Court should find that Plaintiff has not established an injury in fact. Therefore, Plaintiff's Amended Complaint must be dismissed under Rule 12(b)(1) for lack of standing.

## II. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted Under Title III of the ADA.

Complaints "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do," and a plaintiff must plead more than "labels and conclusions." *Twombly*, 550 U.S. at 555. Furthermore, courts are not bound to accept a plaintiff's legal conclusions when conducting this inquiry. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Title III claims require a plaintiff to allege: (1) that [he] is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant has failed to provide the plaintiff equal access to the goods or services provided at such place of public accommodation as a result of plaintiff's disability. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

The weight of national authority holds that places of public accommodation must be physical spaces, or at least have a nexus to a physical space. Of the seven appellate circuits which have ruled on the issue, five hold that public accommodations either must be a physical space or have a nexus to a physical place:

- **Third Circuit Court of Appeals** - *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place. . . ").

- **Fifth Circuit Court of Appeals** - *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 533-36 (5th Cir. 2016) (holding principle of *noscitur a sociis* and analysis of DOJ regulations supported limiting Title III to physical places).

- **Sixth Circuit Court of Appeals** - *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in [Title III] is that a public accommodation is a physical place.").

- **Ninth Circuit Court of Appeals** - *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000) (adopting view of Third and Sixth Circuits that a public accommodation under Title III is a physical place).

- **Eleventh Circuit Court of Appeals** - *Rendon v. Valleycrest Prods.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (requiring nexus between physical place and discriminatory restrictions on access of the physical space by disabled individuals); *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1274-77 (11th Cir. 2021) (concluding "websites are not a place of public accommodation under Title III of the ADA."), *opinion vacated on mootness grounds on panel reh'g*, 21 F.4th 775 (11th Cir. 2021).

The ADA was plainly not intended to cover each and every business in the United States, but rather to a limited set of activities affecting commerce. *Magee*, 833 F.3d, at 532-33; 42 U.S.C. § 12181(7). The list of public accommodations in Title III is exhaustive. *See Magee*, 833 F.3d, at 535 (examining legislative history).

Congress provided that the ADA should be construed liberally. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). But liberal construction neither requires nor allows a court to broaden the scope of a statute far beyond its text. *Yates v. United States*, 574 U.S. 528, 543 (2015) ("we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.") (internal quotations removed). Moreover, "'considerations of policy divorced from the statute's text and purpose [can] not override its meaning.'" *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 183 (E.D.N.Y. 2021) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct. 1723, 1731 (2011)).

As many circuit courts of appeal have noted, the language of Title III cabins "public accommodation" to physical places. *Magee*, 833 F.3d, at 534; *Parker*, 121 F.3d, at 1014; *Ford*, 145 F.3d, at 613-14; *Weyer*, 198 F.3d, at 1114-15, *Rendon*, 294 F.3d, at 1282; *Gil*, 993 F.3d, at 1274-77. Title III's definitions section provides:

> The following private entities are considered public accommodations for purposes of this [Title III] if the operations of such entities affect commerce—
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
> (B) a restaurant, bar, or other establishment serving food or drink;
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
> (G) a terminal, depot, or other station used for specified public transportation;
> (H) a museum, library, gallery, or other place of public display or collection;
> (I) a park, zoo, amusement park, or other place of recreation;
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

"Websites or other virtual businesses are not included explicitly or implicitly among any of the categories [enumerated in 42 U.S.C. § 12181(7)]." *Martinez v. Mylife.com, Inc.*, No. 21-cv-4779 (BMC), 2021 U.S. Dist. LEXIS 210585, at *4, 2021 WL 5052745 (E.D.N.Y. Nov. 1, 2021). Indeed, United States Supreme Court precedent implies that "'places' of public accommodation

are presumptively physical locations, at least in federal court." *Newsday*, 556 F. Supp. 3d, at 180 (citing *BSA v. Dale*, 530 U.S. 640 (2000) and *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)).

Courts examining the definition of "public accommodation" under Title III have found that the enumerated accommodations refer overwhelmingly if not exclusively to physical places. *Mylife.com*, 2021 U.S. Dist. LEXIS 210585, at * 4-5 ("Of the fifty specific examples of businesses contained within the ADA's definition of 'public accommodation', at least forty-nine indisputably relate to physical places.") (citing *Newsday*, 556 F. Supp. 3d, at 176-77); *Ford*, 145 F.3d, at 614 ("The litany of terms, including 'auditorium,' 'bakery,' 'laundromat,' 'museum,' 'park,' 'nursery,' 'food bank,' and 'gymnasium[]' refer to places with resources utilized by physical access."); *Parker*, 121 F.3d, at 1010-11 ("As is evident by § 12181(7), a public accommodation is a physical place.") (citing *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580 (6th Cir. 1995), *cert. denied*, 516 U.S. 1028 (1995)).

The definitions given by Congress should not be expanded to reach places the legislature did not intend. *See Yates*, 574 U.S., at 543; *see also Magee*, 833 F.3d, at 535-36 (noting the exhaustive nature of the list of public accommodations in Title III means courts should refrain from expanding the definitions given by Congress).

The Second Circuit has held that "*an entity covered by Title III* is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 33, (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000) (emphasis added). *Pallozzi* concerned the underwriting practices of an insurance provider with physical offices, which are undisputedly within the scope of Title III. *Id.* at 33 n. 3

("There is no dispute that Plaintiffs in this case have such a nexus [to a place of public accommodation under Title III].").

"Whether a website is a place of 'public accommodation' subject to ADA protection has not been decided by the Second Circuit." *Romero v. 88 Acres Foods, Inc*., 580 F. Supp. 3d 9, 17 (S.D.N.Y. 2022). District courts within the Second Circuit have undertaken their own interpretations of the text of Title III and *Pallozzi* and have reached opposite conclusions regarding applicability of Title III to websites. *See id.* at 18-19 (summarizing different outcomes).

Some district courts have held that a physical retailer's website is a place of public accommodation subject to Title III. *E.g.*, *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017). Blick operated seven stores in New York. *Id.* at 386. The district court in *Blick* ultimately decided that a website—in that case having a nexus to a physical space—can be a place of public accommodation. *Id.* at 393. The court in Blick relied heavily on *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015), which itself relies on the minority view espoused by the First Circuit in *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England*, 37 F.3d 12 (1st Cir. 1994).

Some courts in the Second Circuit have extended the logic of *Blick* to find a website is a place of public accommodation even without a connection to a physical space. *E.g.*, *88 Acres Foods, Inc.*, 580 F. Supp. 3d, at 19-21. The court in *88 Acres Foods* found that the relevant text of Title III, 42 U.S.C. § 12181(7), was ambiguous and "silent as to websites." *Id.* at 20. The district court then construed the statutory text and legislative history to find that a standalone website is subject to Title III. *Id.* at 20-21.

However, other district courts in the Second Circuit have concluded "[t]he physical place, per *Pallozzi*, is a condition precedent; once that condition is satisfied, the goods and services sold

by that place of public accommodation are swept within the ADA's remit." *Newsday*, 556 F. Supp. 3d, at 181. These courts have noted that "the plain text of [Title III] contemplates inclusion of only businesses with a physical location." *Mylife.com*, 2021 U.S. Dist. LEXIS 210585, at *4. Accordingly, where the operator of a website has "no public-facing, physical retail operations," the website is not subject to Title III. *Id.* at *6; *Newsday*, 556 F. Supp. 3d, at 181; *Sookul v. Bry's Comics, Inc.*, No. 23-Civ.-2394 (JPC) 2023 U.S. Dist. LEXIS 93884, at *3 (S.D.N.Y. May 26, 2023) (directing plaintiff's counsel to demonstrate that he stated a cause of action under Title III against an online-only business prior to obtaining default judgment); *Toro v. Merdel Game Mfg. Co.*, No. 22-Civ.-8505 (JPC), 2023 U.S. Dist. LEXIS 23215, at *3 (S.D.N.Y. Feb. 10, 2023) (same); *Burbon v. Needlepaint LLC*, No. 21-CV-1678 (EK) (RER), 2022 U.S. Dist. LEXIS 63467, at *11, 2022 WL 21781622 (E.D.N.Y. Apr. 5, 2022) (recommending denial of default judgment because online-only business was not a public accommodation under Title III).

Plaintiff has failed to plead facts sufficient to show the necessary elements of his Title III claim. For purposes of this motion, FCT does not dispute that Plaintiff is disabled and satisfies the first element of a Title III claim, but Plaintiff has failed to establish the second element. FCT is an online retail company and operates solely through the Website. FCT is not a place of public accommodation because it has no nexus to a physical place of business (in New York or elsewhere) and is therefore not subject to Title III. For this reason, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

This Court should join the majority of circuit courts of appeal and other courts in the Second Circuit and hold that in order to be subject to Title III, a website must have a nexus with a physical location. The requirement of a physical nexus is directly in line with the language of Title III as written. The text of Title III does not identify websites as places of public accommodation

and provides an exhaustive list replete with physical spaces. Under the plain language of Title III, a website standing alone is not a place of public accommodation.

To the extent that any of the enumerated public accommodations could possibly be read to include non-physical spaces, this Court should apply the canons of *noscitur a sociis* and *ejusdem generis*. Applying these canons, any terms that this Court finds ambiguous should be interpreted by reference to the accompanying words of the statute—accompanying words which refer exclusively to physical spaces. Thus, any ambiguous entries in the list of public accommodations should also be read as limited to physical spaces.[2]

The Second Circuit's most analogous precedent further supports this interpretation. The Second Circuit in *Pallozzi* may have expanded the duties of an entity covered under Title III, but it did not expand the scope of "public accommodation" under Title III. The controversy in that case was not whether the insurance provider was a place of public accommodation subject to Title III, but rather whether the insurer's underwriting conduct violated Title III.

Thus, as the district courts in *Newsday* and *Mylife.com* recognized, whether a business is covered by Title III is a threshold trigger for the duties imposed by *Pallozzi*. It does not follow that the duties imposed should be somehow reversed and used to establish the standard for whether an entity is covered by Title III in the first place. Ultimately, as other courts in this circuit have noted, *Pallozzi* is easily harmonized with the physical nexus requirement because the Second Circuit found the nexus to an insurance office, a physical place enumerated under Title III, was so evident

---

[2] Some courts rely on the inclusion of "travel services" as extending the scope of public accommodations to non-physical spaces. But the Second Circuit implied that this term referred to a business which had physical offices even though the services "are ordinarily used outside the premises." *Pallozzi*, 198 F.3d, at 33; *see also Parker*, 121 F.3d, at 1014 (6th Cir. 1997) ("it is likely that Congress simply had no better term than "service" to describe *an office* where travel agents provide travel services[.]") (emphasis added). Some district courts also rely on the residual clause "other sales or rental establishments" to extend Title III to websites. But, the common meaning of "establishment" refers to a physical place. *See Magee*, 833 F.3d, at 534 (applying dictionary definitions). Thus, even disregarding the canons of statutory construction, it is proper to read these terms as limited to physical places.

the connection was disposed of in a footnote. Second Circuit precedent does not prevent this Court from finding the Website is not a place of public accommodation absent a nexus with a physical store or location open to the public. This Court should therefore adopt this position, find that Plaintiff has failed to state a claim for which relief can be granted, and dismiss the Amended Complaint.

Contrary decisions of other district courts do not compel a different result. Many cases, such as *Blick*, are readily distinguishable from the present case because FCT operates no physical stores, in New York or otherwise. By operating physical stores or locations, defendants in other cases were clearly subject to Title III and therefore were bound to provide more than just physical access to their goods and services under *Pallozzi*. Just as in *Pallozzi*, there was no doubt that the websites in question had a sufficient nexus to an established place of public accommodation, i.e., the physical stores or locations. Because the issue in *Blick* could be resolved directly under *Pallozzi*, any extraneous examination of the scope of Title III should be disregarded as dicta.

In other cases such as *88 Acres Foods* where district courts have analyzed the text of Title III, the analysis has relied primarily on either the First Circuit's opinion in *Carparts* or on policy arguments underlying the ADA. The First Circuit's *Carparts* decision is a minority position, and its reasoning has been highly questioned by other circuit courts of appeal. And while policy considerations may carry some influence, they simply cannot override the text of a statute.

Other district courts in this circuit have noted the difficulties of interpreting Title III in light of three intervening decades of digital evolution and the continued rise of e-commerce. But as the Honorable Judge Komitee noted, Congress could have drafted Title III's definition of public accommodation to include the internet, or other types of businesses without brick-and-mortar premises. *See Newsday*, 556 F. Supp. 3d, at 177-78. It did not do so. Congress has also

conspicuously declined to bring websites under Title III via legislation in the intervening 34 years, which undermines Plaintiff's position. *Id.* at 178 n. 11.

Of course, a plethora of businesses operate in an entirely digital capacity, without public physical spaces. To expand Title III to cover these businesses would go beyond the text of the ADA and would be an improper exercise of judicial power. The ADA was not meant to reach each and every business in the country. Rather, Congress enumerated a list of covered entities which it recognized as exhaustive. A website standing alone does not appear on that list.

Finding that a website without a nexus to a physical place of accommodation is subject to Title III reads into the statute an entirely new category of covered entity. Doing so would impose massive new regulatory burdens on actors Congress evidently did not intend the ADA to reach. Doing so would also be unfair to businesses who would not be on notice of these regulatory obligations.[3] After all, the text of Title III would not place an online-only business on notice that it is covered by that law. And further research would uncover that in most of the country, a standalone website is not subject to Title III.[4] Ultimately it is the duty of Congress, not the courts, to extend the scope of the ADA in this manner if it wishes to do so. Accordingly, this Court should decline to extend Title III to websites absent a physical nexus.

For the reasons set forth above, this Court should find that a website without a nexus to any physical retail space is not a public accommodation. Because the Website is not a place of

---

[3] Applying Title III to a party which is not clearly subject to it without prior notice raises due process concerns. *See County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 195 (2d Cir. 2001) ("Due process requires that before a criminal sanction or significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible.").

[4] The Circuit Courts of Appeal which have ruled standalone websites are not public accommodations encompass 22 states and approximately 59% of the US population (as of the 2020 census). The Circuit Courts of Appeal which have not yet ruled on the issue comprise 21 states and approximately 29% of the US population. By contrast, the Circuit Courts of Appeals which have held websites are public accommodations cover only 7 states and approximately 12% of the US population.

public accommodation within the scope of Title III, Plaintiff has failed to demonstrate a required element of his claim and this Court must dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

### III. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's State and Local Law Claims and These Claims Are Legally Deficient.

A federal court must dismiss claims if at any time the court determines it lacks subject matter jurisdiction over them. Fed. R. Civ. P. 12(h)(3). Exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 requires a federal subject matter claim as the anchor. *Eisner v. Cardozo*, 684 F. App'x 29, 32 (2d Cir. 2017) (quoting *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 437, 439-40 (2d Cir. 2011)) (ordering state law claims dismissed when anchor ADA claims were properly dismissed before trial).

Plaintiff's New York State and City law claims are governed by the same standing requirements as the ADA. *Mendez v. Apple Inc.,* 2019 U.S. Dist. LEXIS 110640, at *9, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). A plaintiff who lacks standing to bring an ADA suit also lacks standing to bring the equivalent claims under state and city laws. *Mendez*, 2019 U.S. Dist. LEXIS 110640, at *9.

Dismissal of a declaratory action is appropriate where the action is duplicative or redundant with an ADA claim. *See Kane v. Blueprint Test Preparation LLC*, No. CV 19-3024 (SJF) (AKT), 2020 U.S. Dist. LEXIS 155358, at *27-28 (E.D.N.Y. Aug. 24, 2020) (dismissing declaratory relief claims where ADA claim was dismissed as moot); *Guerrero v. Ellusionist.Com, Inc.*, No. 22-cv-2465 (ER), 2023 U.S. Dist. LEXIS 97870, at *10, 2023 WL 3847402 (S.D.N.Y. June 6, 2023) (dismissing declaratory relief count as redundant with Title III claim); *Chalas v. Pork King Good*, No. 22-cv-03894 (ER), 2023 U.S. Dist. LEXIS 79100, at *10, 2023 WL 3293639 (S.D.N.Y. May 5, 2023) (same).

Plaintiff's Amended Complaint seeks relief under the New York State Human Rights Law ("NYSHRL"), New York State Civil Rights Law ("NYSCRL"), and New York City Human Rights Law ("NYCHRL") arising out of the same facts and circumstances as his claims under the ADA. Plaintiff also seeks declaratory relief. Because Plaintiff's claim for declaratory relief is duplicative and redundant with his ADA claim, it should be dismissed.

Plaintiff asserts that this Court has supplemental jurisdiction over the state and city law claims. As set forth above, Plaintiff's federal ADA claim must be dismissed for lack of standing and failure to state a claim. Because this dismissal will result in no remaining federal claim, continued exercise of supplemental jurisdiction would be improper and this Court should decline to exercise it. *See Banana Republic*, 613 F. Supp. 3d, at 766. Therefore, Plaintiff's state and city claims must be dismissed.

Further, Plaintiff's state and city claims are not justiciable because Plaintiff lacks standing. The standing requirements for the ADA claim and the state and city law claims are identical. As set forth above, Plaintiff lacks standing to bring the instant suit under the ADA. For the same reasons, he lacks standing to bring the state and city law claims. Therefore, Plaintiff's state and city law claims must be dismissed.

Finally, even assuming Plaintiff had standing and jurisdiction was proper, his state and city law claims fail. Plaintiff does not allege that he ever requested an accommodation from FCT. This is substantively fatal to his state and city law claims. *See Sullivan v. Bdg Media*, 71 Misc. 3d 863, 872, 146 N.Y.S.3d 395, 403 (Sup. Ct. NY Cty. 2021) (dismissing NYSHRL, NYSCRL, and NYCHRL claims where plaintiff failed to allege he requested an accommodation or allege facts showing such request would be futile).

## **CONCLUSION**

Plaintiff does not allege anything more than conclusory statements of interest in FCT's Website. Though he tracks the language of Title III standing requirements, these words are not magic invocations that grant him standing. Rather, Plaintiff presents a Mad-Libs pleading ready for any chosen defendant by filling in the blank with the most basic statements about what the defendant sells. These allegations viewed in their factual context fail to plausibly plead an injury in fact, and Plaintiff therefore lacks standing to bring his claims.

Moreover, the Website is not a place of public accommodation. This Court should adopt this view as it is consistent with the text of Title III and with the interpretation of the majority of courts across the nation. Because the Website is not a public accommodation, Plaintiff fails to plead a threshold element of a Title III claim. Plaintiff's state and local law claims must fall with the federal ADA claim, and are separately legally insufficient. For this and the foregoing reasons, FCT respectfully requests that this Court dismiss the Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: April 5, 2024

Respectfully submitted,

_____

Adam C. Losey, Esq.
N.Y. Bar No. 4848867
LOSEY PLLC
44 Court Street, Suite 1217,
Brooklyn, NY 11201
(407) 906-1605
alosey@losey.law

docketing@losey.law
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system this 5th day of April 2024, which will provide notice and copy hereof to all counsel of record.

_____
Adam C. Losey, Esq.
N.Y. Bar No. 4848867