**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SANJAY SOOKUL, on behalf of himself and :    Civil Case No.: 1:23-cv-10164-GHW
all others similarly situated,              :
                                         :
             Plaintiffs,            :
                                         :
       v.                              :
                                         :
FRESH CLEAN THREADS INC.,       :
                                         :
           Defendant.        :
                                         :
                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Pages**

I. PRELIMINARY STATEMENT…………………………………………………1

II. STATEMENT OF FACTS…………………………………………………… 2

III. LEGAL STANDARDS..………………………………………………… 5

IV. ARGUMENT………………………………………………………. 6

   A. BECAUSE PLAINTIFF HAS ALLEGED A PROPER BASIS FOR THE REQUISITE STANDING, PLAINTIFF'S CLAIMS ARE JUSTICIABLE AND THE COURT DOES NOT LACK SUBJECT MATTER JURISDICTION……………………………………….………………7

   B. BECAUSE PLAINTIFF HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED, DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED.…………………………………….............................…16

      i. Defendant's Website is a place of public accommodation under applicable law…………….…………………17

   C. BECAUSE DEFENDANT HAS FAILED TO DEMONSTRATE SUFFICIENT GROUNDS FOR DISMISSAL OF THE FEDERAL ADA CLAIM ASSERTED BY THE AMENDED COMPLAINT, THE REQUEST FOR DECLARATORY RELIEF, THE STATE LAW CLAIMS, AND NEW YORK CITY LAW CLAIMS MUST BE SUSTAINED…………………………………...…………. 20

V. CONCLUSION……………………………………………………. 21

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Access 4 All, Inc. v. G & T Consulting Co., LLC*,
2008 U.S. Dist. LEXIS 30594 (S.D.N.Y. Mar. 28, 2008) ……………………………….12

*Adams v. 46 N LLC*,
2023 U.S. Dist. LEXIS 29696 (S.D.N.Y. Feb. 22, 2023) …..………………………..…14

*Anderson v. Metro-North Commuter R.R. Co.*,
2019 U.S. Dist. LEXIS 69831 (S.D.N.Y. Apr. 24, 2019) …………………………….…5

*Andrews v. Blick Art Materials, LLC*,
268 F. Supp. 3d 381 (E.D.N.Y. Aug. 1, 2017) …………….……………………….…18

*Angeles v. Grace Prods. Inc.*,
2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sept. 23, 2021) ………………………...…8

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
643 F3d 1165 (9th Cir 2010) ……………………………………………………….…15

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) …………………………….…………………………………5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) …………………………………….………………………….…5

*Camacho v. Vanderbilt Univ.*,
2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) …………………….…...…9, 15

*Calcano v. Swarovski N. America Ltd.*,
36 F.4th 68 (2d Cir. 2022) ……………………………………………………………9, 10

*Chalas v. Barlean's Organic Oils, LLC*,
2022 U.S. Dist. LEXIS 211816 (S.D.N.Y. Nov. 22, 2022) …………………….…12

*Chalas v. Pork King Good*,
673 F. Supp. 3d 339 (S.D.N.Y. 2023) ……………………………………….…17, 18

*Chavez v. L2 Liu*,
2021 U.S. Dist. LEXIS 37700 (E.D.N.Y. Feb. 26, 2021) …………………………….…15

*City Bank Farmers' Trust Co. v. United States*,
5 F. Supp. 871 (S.D.N.Y. 1934) ……………………………………………………….…..14

*Davis v. Wild Friends Foods, Inc.*,
2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023) ……………………12, 13, 14, 16

*Delacruz v. Ruby Tuesday, Inc.*,
2020 U.S. Dist. LEXIS 163969 (S.D.N.Y. Sept. 8, 2020) ……………………………….…13

*Del-Orden v. Bonobos, Inc.*,
2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) …………………………….…18

*D'Lil v. Best W. Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008) ……………………………………………………….…..16

*Dominguez v. Banana Republic, LLC*,
613 F. Supp. 3d 759 (S.D.N.Y. 2020) ……………………………………………….…18, 19

*Gertskis v. EEOC*,
594 F. App'x 719 (2d Cir. 2014) ……………………………………………………….…6, 7

*Gregory v. Daly*,
243 F.3d 687 (2d Cir. 2001) …………………………………………………….…5

*Guerrero v. Ellusionist.Com, Inc.*,
2023 U.S. Dist. LEXIS 97870 (S.D.N.Y. June 6, 2023) ……………………………….…18

*Guerrero v Ogawa USA Inc.*,
2023 U.S. Dist. LEXIS 109579 (S.D.N.Y. June 26, 2023) ………………………….…13

*Harty v. Nyack Motor Hotel Inc.*,
2020 U.S. Dist. LEXIS 40429 (S.D.N.Y. Mar. 9, 2020) ……………………………….…18

*Jackson v. New York*,
381 F. Supp. 2d 80 (N.D.N.Y 2005) ……………………………………………….……6

*John v. Whole Foods Mkt. Group, Inc.*,
858 F3d 732 (2d Cir. 2017) ………………………………………………………....…7

*Koch v. Christie's Int'l, PLC*,
699 F.3d 141 (2d Cir. 2012) …………………………………………………….…..5

*Kreisler v. Second Ave. Diner Corp.*,
731 F.3d 184 (2d Cir. 2013) ……………………………………….……14

*Lin Kwok Keung v. Patisseries Saines Corp.*,
2023 U.S. Dist. LEXIS 120258 (S.D.N.Y. July 12, 2023) ……………………….…...13

*Loadholt v. ShirtSpace*,
2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar. 6, 2023) ………………………7, 8, 9, 11

*Longo v. Keybank Nat'l Ass'n*,
357 F. Supp. 3d 263 (S.D.N.Y. 2019) …………………………………………………6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ………………………………………………………….…7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) …………………………………………………….…6

*Martinez v. Mylife.com, Inc.*,
2021 U.S. Dist. LEXIS 210585 (E.D.N.Y. Nov. 1, 2021) ………………………….19

*Pallozzi v. Allstate Life Insurance Co.*,
198 F.3d 28 (2d Cir. 1999) …………………………………………………….…18

*Romero v. 88 Acres Foods, Inc.*,
580 F. Supp. 3d 9 (S.D.N.Y. 2022) ………………………………………………….19

*Sanchez v. NutCo, Inc.*,
2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) ……………………………9

*S.E.C. v. Rosenthal*,
650 F.3d 156 (2d Cir. 2011) ……………………………………………….…..18

*Starr v. Sony BMG Music Entertainment*,
592 F.3d 314 (2d. Cir. 2010) …………………………………………………..6

*Tavarez v. Moo Organic Chocolates, LLC*,
2022 U.S. Dist. LEXIS 154249 (S.D.N.Y. Aug. 26, 2022) ……………………….…17

*Thompson v. Equifax Info. Servs. LLC*,
2022 U.S. Dist. LEXIS 32935 (E.D.N.Y. Feb. 24, 2022) ………………………….…7

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006) ……………………………………………….……6

*United States v. Esquivel,*
88 F.3d 722 (9th Cir. 1996) ………………………………………………………14

*Walters v. Fischer Skis U.S., LLC,*
2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) …………………….…20

*Watts v. Jackson Hewitt Tax Serv. Inc.,*
579 F. Supp. 2d 334 (E.D.N.Y. Aug. 16, 2008) ………………….…..……………….…6

*Woods v. Maytag Co.,*
807 F. Supp. 2d 112 (E.D.N.Y. 2011) …………………………………………...…6

**Rules**

FED. R. CIV. P. 12(B)(1) ............................................................... 6, 7, 8, 13, 18

FED. R. CIV. P. 12(B)(6) ...............................................................5, 6, 16, 20

42 U.S.C. § 12101 ............................................................................. 18

Plaintiff SANJAY SOOKUL ("Plaintiff") respectfully submits this memorandum of law in opposition to FRESH CLEAN THREADS INC.'s ("Defendant") motion to dismiss and supporting documents ("Motion to Dismiss").[1]

## I.      PRELIMINARY STATEMENT

The Amended Complaint properly pleads all of the necessary elements for the relief sought and this Court has subject matter jurisdiction over Plaintiff's viable and well-pled claims. Despite defense counsel's Duty of Candor to this Court, Defendant's attempt at arguing otherwise conveniently ignores numerous decisions in this district (even those post the Second Circuit's *Calcano* decision) that demonstrate the Amended Complaint has sufficiently pled a basis for subject matter jurisdiction.

Likewise for Defendant's arguments in support of a Rule 12(b)(6) dismissal. While Defendant brings the clear minority from this District and caselaw from outside of this District (indeed, from outside of the Second Circuit) to argue that its website is not a place of public accommodation afforded equal protection under the ADA, Defendant's arguments ignore both (i) the clear judicial trend in this District as well as under the Second Circuit, and (ii) the undeniable current reality of online commerce and the express congressional intent inherit in the ADA. Indeed, Defendant's arguments ignore an express opinion by this very Court finding that the arguments set forth by Defendant would "produce absurd results."

Given the above, Defendant's Motion to Dismiss should be denied in its entirety.

---

[1] As used in this motion, the term "Amended Complaint" refers to the First Amended Class Action Complaint filed in this action on January 22, 2024 (ECF No. 11), and "Def. Mem." refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 16) filed on April 5, 2024.

## II.     STATEMENT OF FACTS

As alleged in the Amended Complaint, Defendant is a retail company that owns and operates the website www.Freshcleantees.com (the "Website"), through which it offers consumers the ability to browse and make online purchases of a variety of tee shirts for men and women, hoodies, sweatpants, and other apparel for home delivery.  Amended Complaint at ¶¶ 4, 18, 25-26; *see also* Def. Mem. at p. 1. Defendant uses its Website to conduct business throughout the United States, including in New York State. Amended Complaint at ¶¶ 13-14, 17, 24.

The Amended Complaint further alleges as follows: Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to properly utilize his computer to access the internet.  Amended Complaint at ¶ 2.  Plaintiff was interested in updating his closet with comfortable new shirts for the new season and his friend told him about the unique and high-quality clothing offered for affordable prices on Defendant's Website. Amended Complaint at ¶ 10. After browsing and reviewing the products offered for sale on the Website, Plaintiff intended to make an online purchase of a tee shirt on the Website. Amended Complaint at ¶ 10. Plaintiff was drawn to the Website for having great sales and clothing subscription services. Amended Complaint at ¶ 10. However, Plaintiff encountered difficulties navigating Defendant's Website because of certain accessibility issues. Amended Complaint at ¶ 10.

As of the date on which the Amended Complaint was filed, Plaintiff had made numerous attempts to complete a purchase on the Website, first on October 20, 2023, then again October 28, 2023, and then again December 12, 2023, but was unable to do so because of the many access barriers on Defendant's Website.  Amended Complaint at ¶ 36.  The Amended Complaint explicitly delineates the numerous access barriers that Plaintiff encountered on the Website, which include,

without limitation, the following (collectively, the "Access Barriers"):

a. There is content that is auto-moving and lack a method to pause/stop, resulting in a frustrating experience for Plaintiff as it caused an undesirable distraction;

b. Plaintiff was forced to navigate through repeated blocks of content (such as headers) every time he loaded the page due to the lack of a 'skip to the main content' link;

c. Plaintiff had difficulty understanding the structure of the page due to the incorrect heading structure present on the page;

d. Plaintiff was unaware of the grouping of elements with similar properties and how many items were in the list due to the lack of tags for header elements;

e. Plaintiff was unaware of the action associated with the "Search" button due to the lack of a label;

f. Plaintiff was unable to understand the purpose of the "Cart" button due to the lack of a descriptive announcement by his screen reader (the screen reader only announces "0" on reaching the control);

g. Plaintiff was unaware of the action associated with the "(X) Close" button due to the lack of a label;

h. Plaintiff was unaware of the actions associated with the "Previous/Next" buttons due to the lack of a label;

i. Plaintiff's screen reader did not announce the old price/strikethrough price when reaching the price text, therefore Plaintiff was unable to access the pricing information;

j. Links and buttons work differently therefore Plaintiff experienced a great deal of confusion while navigating the page due to the incorrect dual role announcement by his screen reader

on reaching the "Quick Shop" links; and

k. Plaintiff's screen reader did not locate the existence of the accessibility tool on Defendant's website; when the tool was manually found by Plaintiff, the accessibility tool caused Plaintiff's screen-reader to glitch and stop working.

Amended Complaint at ¶ 34.

The Website's inaccessible design deprives Plaintiff and other blind customers the opportunity to make purchases on the Website on their own; thus, the Access Barriers deny Plaintiff full and equal access, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website. *See, e.g.,* Amended Complaint at ¶¶ 29, 34-35, 38. Because of the Access Barriers, Plaintiff and other blind customers must spend time, energy, and/or money to make their purchases at traditional brick-and mortar retailers. Amended Complaint at ¶ 36. If the Website were made accessible, Plaintiff and other visually impaired persons could independently investigate products and make purchases via the Internet as sighted individuals can and do. Amended Complaint at ¶ 36.

Had the Website be properly accessible, Plaintiff would otherwise use the Website and would otherwise be able to fully and equally enjoy the benefits and services of the Website. Amended Complaint at ¶ 37. Indeed, Plaintiff has stated his continued intent to visit the Website again to complete a purchase when Defendant removes the Access Barriers from the Website. Amended Complaint at ¶ 39. As clearly alleged in the Amended Complaint, Plaintiff is still interested in purchasing tee shirts and other clothing from the Website, as the Website is known for offering high-quality tee shirts in multi-packs, which lower the price per item. Amended Complaint at ¶ 39. Defendant also offers a subscription service for clothing on its Website, in which

4

Plaintiff is interested in enrolling to further bolster his wardrobe and purchasing clothing for even lower prices. Amended Complaint at ¶ 39.

Based on this, the Amended Complaint adequately alleges (i) Defendant's violations of 42 U.S.C. § 12181 *et seq.* –Title III of the ADA (First Cause of Action); (ii) Defendant's violations the New York State Human Rights Law, N.Y. Exec. Law Article 15 (the "NYSHRL") (Second Cause of Action); (iii) Defendant's violations of Article 4 of the New York State Civil Rights Law (the "NYSCRL") (Third Cause of Action); and (iv) Defendant's Violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL") (Fourth Cause of Action). Additionally, the Complaint seeks Declaratory Relief related to such violations (Fifth Cause of Action).

### III.  LEGAL STANDARD

First and foremost, the Second Circuit cautions district courts from hastily dismissing complaints of civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

In order to survive a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all of a complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Anderson v. Metro-North Commuter R.R. Co.*, No. 18-cv-6152-ER, 2019 U.S. Dist. LEXIS 69831, at *6 (S.D.N.Y. Apr. 24, 2019) (*citing Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Accordingly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an

5

entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft*, S. Ct. at 1950).

The question on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim. *Longo v. Keybank Nat'l Ass'n*, 357 F. Supp. 3d 263, 269 (S.D.N.Y. 2019) (citations omitted). Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d. Cir. 2010); *see also Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 343-44 (E.D.N.Y. Aug. 16, 2008) (quoting *Twombly*, 127 S. Ct. at 1955). Therefore, a motion to dismiss under Rule 12(b)(6) may be granted only if a court finds that Plaintiffs failed to set forth fair notice of what the claim is and the grounds upon which it rests. *See Twombly*, 127 S. Ct. at 1964. Motions to dismiss for failure to state a claim are "generally viewed with disfavor, and the standard for dismissal under Rule 12(b)(6) is quite narrow." *Jackson v. New York*, 381 F. Supp. 2d 80, 84 (N.D.N.Y 2005).

Likewise, in reviewing a motion to dismiss under Rule 12(b)(1), a court must "accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Gertskis v. EEOC*, 594 F. App'x 719, 721 (2d Cir. 2014) (*citing Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Granting dismissal under Rule 12(b)(1) is appropriate only "when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* (*citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

**IV.    ARGUMENT**

In its Motion to Dismiss, Defendant raises three arguments: (i) that "Plaintiff's Claims Are Not Justiciable Because Plaintiff Lacks Standing" (Def. Mem. at p. 2); (ii) that "Plaintiff Fails To

State A Claim Upon Which Relief Can Be Granted Under Title III of the ADA" (Def. Mem. at p. 6); and (iii) "This Court Lacks Subject Matter Jurisdiction Over Plaintiff's State and Local Law Claims and These Claims Are Legally Deficient" (Def. Mem. at p. 16). All three arguments will be addressed in turn.

> **A.    BECAUSE PLAINTIFF HAS ALLEGED A PROPER BASIS FOR THE REQUISITE STANDING, PLAINTIFF'S CLAIMS ARE JUSTICIABLE AND THE COURT DOES NOT LACK SUBJECT MATTER JURISDICTION**

Defendant first argues that Plaintiff fails to plausibly allege standing. Def. Mem. at pp. 2-6. However, the allegations in the Amended Complaint clearly satisfy the necessary burden of demonstrating standing.

From a procedural perspective: "To satisfy the 'irreducible constitutional minimum' of standing. . . . [a]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice." *John v. Whole Foods Mkt. Group, Inc*., 858 F3d 732, 736 (2d Cir 2017) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Thompson v. Equifax Info. Servs. LLC*, 2022 US Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022) ("[H]ere, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing"). Moreover, when considering a Rule 12(b)(1) motion to dismiss, a court must "accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Gertskis v. EEOC*, 594 F. App'x 719, 721 (2d Cir. 2014). Further, "[t]o satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *5-6

(S.D.N.Y. Mar. 6, 2023) (*citing Angeles v. Grace Prods. Inc.*, No. 20-CV-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021) (collecting cases).

The *Loadholt v. ShirtSpace* decision is particularly instructive. The court in the *Loadholt* case found that the plaintiff met the necessary burden and therefore denied the defendant's Rule 12(b)(1) motion to dismiss:

> The Court finds that [p]laintiff has satisfied his burden of demonstrating standing. . . .Here, Plaintiff alleges that he tried to access the website in order to buy a T-shirt[,] claims that he was unable to navigate the website and describes in detail the accessibility barriers that prevented him from doing so[,] [and] also alleges what days he tried to access the website: March 24 and June 16, 2022. . . Additionally, Plaintiff alleges that he intends to revisit the website in the future and alleges that Defendant has not remedied the accessibility issues on the website.

*Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *5-6.

In this case, the Amended Complaint alleges that Plaintiff accessed the Website with the intent to make an online purchase of a tee shirt after his friend told him about the unique and high-quality clothing offered for sale at affordable prices on Defendant's Website, as Plaintiff was interested in updating his closet with comfortable new shirts for the new season. Amended Complaint at ¶ 10. The Amended Complaint further alleges that (i) Plaintiff was drawn to the Website for having great sales and clothing subscription services (Amended Complaint at ¶ 10); and that (ii) Plaintiff had made numerous attempts to complete a purchase on the Website, first on October 20, 2023, then again October 28, 2023, and then again December 12, 2023, but was unable to do so because of the many Access Barriers on Defendant's Website (Amended Complaint at ¶ 36), with such Access Barriers explicitly delineated in detail (Amended Complaint at ¶ 34). Finally, the Amended Complaint alleges that Plaintiff intends to visit the Website again to complete a purchase when Defendant removes the Access Barriers from the Website (Amended Complaint at

¶ 39), as Plaintiff is still interested in purchasing tee shirts and other clothing from the Website because the Website is known for offering high-quality tee shirts in multi-packs (which lower the price per item) and offers a subscription service for clothing on its Website, in which Plaintiff is interested in enrolling to further bolster his wardrobe and purchasing clothing for even lower prices (Amended Complaint at ¶ 39).

These allegations meet Plaintiff's burden, especially at this stage of the litigation. *See e.g., Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *5-6 ("[t]he allegations, read in totality, sufficiently demonstrate [p]laintiff's intent to return to [d]efendant's website. [P]laintiff already returned once to the website on June 16, 2022 to try to complete his T-shirt purchase. [P]laintiff alleges that he 'would still like to return to the [w]ebsite to browse and potentially purchase several T-shirts once it is made accessible to him, and intends to do so once the site is made accessible….' This is sufficient to evince [p]laintiff's intent to return to the website for the standing analysis") (*citing Camacho v. Vanderbilt Univ*., 2019 U.S. Dist. LEXIS 209202, 2019 WL 6528974, at *10 (S.D.N.Y. Dec. 4, 2019); *see also Sanchez v. NutCo, Inc*., 2022 U.S. Dist. LEXIS 51247, at *6-7 (S.D.N.Y. Mar. 22, 2022) (finding that the plaintiff alleged facts that allow a reasonable inference that he intended to return to the subject website, where the complaint alleged that (i) the plaintiff unsuccessfully tried to navigate the subject website; (ii) the subject website's barriers deterred the plaintiff from visiting the website in the future; and (iii) the plaintiff intended to visit the site again in the future when the barriers are cured). Accordingly, the Amended Complaint more than sufficiently alleges the Plaintiff suffered an injury-in-fact and establish Plaintiff's standing, and Defendant's arguments to the contrary fail.

Defendant relies heavily on the Second Circuit's decision *Calcano v. Swarovski N. America*

*Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) ("*Calcano*").[2] However, Defendant fails to account for the clear

distinctions between this case and *Calcano*.

While Defendant is correct that the court in *Calcano* found that the subject allegations did

not plausibly establish that the plaintiffs intended to return to the subject locations, Defendant does

not fully set forth the issues that defeated the subject allegations. For example, the Second Circuit

in *Calcano* noted that one of the plaintiffs "alleges that he 'resides on W. 23rd Street, New York,

NY, on the same street and less than a block from the Kohl's retail store at 271 W. 23rd St, New

York, NY.' But there is no Kohl's store anywhere in Manhattan, let alone at that address. [This

plaintiff] thus lacks standing." *Calcano*, 36 F.4th at 76. The *Calcano* opinion is replete with such

issues, which render the allegations at issue in that case as implausible.

In fact, while Defendant chooses to harp on particularly snappy turn of phrase in the *Calcano*

opinion—that the court noted the plaintiffs' "Mad-Libs-style complaints" (*see* Def. Mem. at p. 4)

—Defendant fails to account for what made the *Calcano* court reach such a finding:

> This backdrop of [the plaintiffs]' Mad-Libs-style complaints further confirms the
> implausibility of their claims of injury. As noted above, Murphy asserts that he would
> return to a Kohl's that doesn't exist. Dominguez seeks to go back to Banana Republic
> for its food. Thorne doesn't even allege where he lives, making an assessment of
> proximity to a Jersey Mike's impossible. Calcano plans to travel from somewhere in
> the Bronx to Columbus Circle for a shaving supply gift card. And all of these plans
> depend on the availability of braille gift cards even though [the] [p]laintiffs never
> explain why they want those cards in the first place. Although we might excuse a stray
> technical error or even credit an odd allegation standing alone as an idiosyncratic
> preference—to do so here in light of the cumulative implausibility of [the] [p]laintiffs'
> allegations would be burying our heads in the sand. Judicial experience and common
> sense suggest that the errors, oddities, and omissions in the complaints are a result of

---

[2] From the outset, reliance on *Calcano* as determinative in this matter is misplaced, as the ADA claims in *Calcano* involved an alleged failure "to carry braille gift cards." *Calcano v. Swarovski N. Am. Ltd.,* 36 F.4th 68, 71 (2d Cir. 2022). As recognized by this Court, "[r]eading the words 'place of public accommodation' to include small slabs of plastic requires more than just a broad construction of Title III—it requires a rewrite of Title III entirely." *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 772 (S.D.N.Y. 2020) (Woods, J.)

their mass production, and they render each [p]laintiff's cookie-cutter assertion of standing implausible.

*Calcano*, 36 F.4th at 77.

Here, there are no "errors, oddities, and omissions" in the Amended Complaint to suggest implausibility. Indeed, Defendant argues "Plaintiff does not claim to have ever purchased anything from the Website, nor has Plaintiff provided more than conclusory allegations that he has some theoretical interest in making a purchase from the Website." Def. Mem. at 4. But Defendant completely ignores explicit allegations in the Amended Complaint, such as how "Plaintiff was interested in updating his closet with comfortable new shirts for the new season and his friend told him about the unique, and high-quality clothing offered for affordable prices at Defendant's Website" (Amended Complaint at ¶ 10), how Plaintiff "[w]as drawn to the Website for having great sales and clothing subscription services" (*id.*), how "Plaintiff is still interested in purchasing tee shirts and other clothing from the Website, as the Website is known for offering high-quality tee shirts in multi-packs, such as packs of three or five, which lower the price per item" (Amended Complaint at ¶ 39), and how "Defendant also offers a subscription service for clothing on its Website, in which Plaintiff is interested in enrolling to further bolster his wardrobe and purchasing clothing for even lower prices" (Amended Complaint at ¶ 39). These allegations are not conclusory, by the very definition of that word.

Defendant argues that "[t]he pure mental conception that one might make a purchase, even of identifiable products, from a retailer does not result in an injury supporting standing, nor does it evidence that Plaintiff is a would-be patron of [Defendant]." Def. Mem. at p. 4. But while Defendant attempts to minimize requisite intent with such phrases as "pure mental conception," Defendant cannot morph the applicable legal standard, which Plaintiff has met. *See Loadholt v. ShirtSpace*,

11

2023 U.S. Dist. LEXIS 36924, at \*5-6 (*supra*) ("The Court finds that [p]laintiff has satisfied his burden of demonstrating standing. . . .Here, Plaintiff alleges that he tried to access the website in order to buy a T-shirt[,] claims that he was unable to navigate the website and describes in detail the accessibility barriers that prevented him from doing so[,] [and] also alleges what days he tried to access the website: March 24 and June 16, 2022. . . Additionally, Plaintiff alleges that he intends to revisit the website in the future and alleges that Defendant has not remedied the accessibility issues on the website").

Indeed, Plaintiff is not even required to allege that he was *entirely* prevented to make a purchase on Defendant's Website; all that is necessary to establish a concrete injury are allegations that the Access Barriers make Plaintiff's experience on the Website more difficult or burdensome. *See, e.g., Davis v. Wild Friends Foods, Inc.,* 2023 U.S. Dist. LEXIS 115542, \*13-14 (S.D.N.Y. July 5, 2023) ("Courts have thus found that, even where the physical or other barriers in question have not entirely prevented disabled plaintiffs from visiting or receiving services offered at a public accommodation, such that the plaintiffs can continue to visit the facility even with those barriers in place, the plaintiffs still have standing to sue under the ADA, when the barriers render their use of the facility more difficult, burdensome, or dangerous than it would be for individuals who are not disabled") (*citing Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 U.S. Dist. LEXIS 30594, 2008 WL 851918, at \*4 (S.D.N.Y. Mar. 28, 2008).

Defendant points to "other factual context" that Defendant claims "also weighs against Plaintiff." Def. Mem. at p. 5. But Defendant's attempted use of "other factual context" fails as well.

Defendant asserts that "[Plaintiff] claims to have visited the Website three times, one of which occurred after the filing of the Complaint in this action" and that "[t]his does not establish a

12

factual history of patronage of the Website or Plaintiff's desire to purchase FCT's products." *Id.* But this argument has been sufficiently disposed of by applicable caselaw. *See, e.g., Chalas v. Barlean's Organic Oils, LLC*, 2022 U.S. Dist. LEXIS 211816, at *8-9 (S.D.N.Y. Nov. 22, 2022) (distinguishing the allegations from those at issue in *Calcano*, finding that the plaintiff has pled sufficient facts to establish standing, and denying the defendant's motion to dismiss pursuant to 12(b)(1), despite the plaintiff only alleging to have visited the defendant's website on the three dates on which she encountered access barriers that prevented her from completing a transaction). Defendant conveniently ignores this case and similar cases for obvious reasons.

Likewise, Defendant's argument of how "Plaintiff is a prolific litigant" (Def. Mem. at p. 4) and how that should somehow require a dismissal of Plaintiff's claims in this particular action also fails.

First, Defendant does not account for the numerous cases post-*Calcano* in which courts have denied arguments set forth by defendants attempting to use the frequency of the plaintiff's filing of ADA cases. *See, e.g., Davis v. Wild Friends Foods, Inc.*, 2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023) (*supra*); *see also Lin Kwok Keung v Patisseries Saines Corp*., 2023 US Dist. LEXIS 120258, at *16 (S.D.N.Y. July 12, 2023) (finding "[r]egardless of whether other parts of the [c]omplaints in this case are 'cookie cutter' when compared to prior filings by [the plaintiff], the allegations, which identify particular areas of the bakery that allegedly are not ADA-compliant with citations to the relevant regulations, are sufficient to plausibly allege violations of the ADA" and noting "the contours of ADA-standing in this Circuit post-*Calcano*, which was decided just over one year ago, are still being developed"); *Guerrero v Ogawa USA Inc*., 2023 U.S. Dist. LEXIS 109579, at *8-9 (S.D.N.Y. June 26, 2023) ("Filing serial, formulaic complaints may, in practice,

sometimes mean the final product does not contain sufficient non-conclusory allegations to survive a motion to dismiss. But that fact does not entitle [p]laintiff to a weaker presumption that the non-conclusory allegations in the FAC are true") (*citing Delacruz v. Ruby Tuesday, Inc.*, 2020 U.S. Dist. LEXIS 163969, 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8, 2020)); *Adams v. 46 N LLC*, 2023 U.S. Dist. LEXIS 29696, at *12 (SDNY Feb. 22, 2023) ("Affording undue weight to [p]laintiff's past litigation tactics for pursuing ADA claims would run counter to the 'remedial purpose' of the ADA to 'eliminate discrimination against disabled individuals'") (*citing Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 189 (2d Cir. 2013)).

Moreover, Defendant's argument ignores the increasingly ubiquitous nature of the internet and online shopping in the average consumer's daily life,[3] the convenience it brings (especially to those that are visually impaired), and the injury that would be experienced if, again and again, one's ability to benefit from such convenience was cut short due to access barriers. If anything, Plaintiff's "serial" litigation history is evidence of the systemic disregard for visually impaired consumers that, unfortunately, is widespread throughout the internet and e-commerce platforms. As stated quite succinctly by Judge Lewis J. Liman in the recent case *Davis v. Wild Friends Foods, Inc.*:

> In its motion to dismiss for lack of standing, Defendant argues that "Plaintiff is a professional litigant who sues website owners that caused him no actual harm" and "[i]n his capacity as a tester, Plaintiff has filed over fifty nearly identical complaints in which he

---

[3] For example, according to the Census Bureau of the U.S. Department of Commerce, the estimate of U.S. retail e-commerce sales for the second quarter of 2023 (adjusted for seasonal variation, but not for price changes) was $277.6 billion, an increase of 2.1 percent (±0.9%) from the first quarter of 2023, while E-commerce sales in the second quarter of 2023 accounted for 15.4 percent of total sales. *See* https://www.census.gov/retail/mrts/www/data/pdf/ec_current.pdf (last visited September 12, 2023). The Court can take judicial notice of government statistics. Victoria Cruises, Inc. v. Yangtze Cruises, Inc. (E.D.N.Y. 2008) 630 F.Supp.2d 255, 263, fn. 3 (*citing United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir. 1996) (taking judicial notice of census data compiled by the United States Department of Commerce); *City Bank Farmers' Trust Co. v. United States*, 5 F. Supp. 871, 873 (S.D.N.Y. 1934) (taking judicial notice of statistics published by Commerce Department); Fed. R. Evid. 201).

makes identical allegations about how he supposedly attempted to patronize websites but was denied access." Defendant contends that, given this litigation history, Plaintiff's allegations that he intended to purchase goods on the Website should not be credited and accordingly Plaintiff has not plausibly alleged an injury in fact. . . . Because a plaintiff's tester status does not preclude standing under the ADA, the fact that the Plaintiff in this case may be an ADA tester is not dispositive. Neither is the fact that Plaintiff may have, as Defendant claims, filed fifty nearly identical complaints. ***The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites. This fact alone therefore does not make Plaintiff's allegations of standing any more or less plausible.*** *See Chavez v. L2 Liu*, 2021 U.S. Dist. LEXIS 37700, 2021 WL 1146561, at \*3 (E.D.N.Y. Feb. 26, 2021) (concluding that plaintiff established standing despite the fact that the case was "one of the twelve nearly identical cases plaintiff has filed in the Eastern District of New York"); *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, 2019 WL 6528974, at \*29 (S.D.N.Y. Dec. 4, 2019) (denying motion to dismiss for lack of standing even "accept[ing] [d]efendant's representation that Plaintiff filed 50 other complaints containing similar, if not identical, allegations against other institutions of higher learning").

2023 U.S. Dist. LEXIS 115542, at \*8-11 (SDNY July 5, 2023) [No. 22-cv-04244 (LJL)] (emphasis added).

Plaintiff, as a visually impaired consumer, was afforded certain rights under the ADA. Those rights were violated by Defendant, as they were a number of times in the past by other corporate entities that failed to ensure compliance with the ADA. Plaintiff's attempts at enforcing those rights in the past should not harm Plaintiff's standing to do so here. Stated differently, *Plaintiff has a right to raise a lawsuit in response to every instance in which his rights as a visually-impaired consumer has been violated.* If Plaintiff's rights are continuously violated by multiple parties, including Defendant, Plaintiff is entitled to protect his rights against every such Defendant, including Defendant. Defendant may not like this fact, but that does not lessen Plaintiff's right or raise the applicable legal standard.

Indeed, it is for this very reason that Congress first enacted the ADA: to afford *continuing*

protection of people with disabilities. Accordingly, "[c]ourts must tread carefully before construing a Disability Act plaintiff's history of litigation against him. As we have noted more than once, '[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the [Disabilities Act]…' We must therefore be 'particularly cautious' regarding 'credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation.'" *Antoninetti v Chipotle Mexican Grill, Inc.*, 643 F3d 1165, 1175 (9th Cir 2010) (*citing D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008)).

In sum, Defendant seeks to demonstrate that Plaintiff's allegations do not meet the necessary standard to demonstrate injury-in-fact, and that Plaintiff's litigation history renders the allegations as implausible. As demonstrated above, however, ample caselaw supports the sufficiency of pleadings in this case for purposes of subject matter jurisdiction, and the context of Plaintiff's litigation history only "[r]eflect the rampant nature of discrimination that persons with visual impairments face when using the internet." *Davis v. Wild Friends Foods, Inc.*, 2023 U.S. Dist. LEXIS 115542, at *11. At the very least, Plaintiff's litigation history "does not entitle Plaintiff to a weaker presumption that the non-conclusory allegations in the [Amended Complaint] are true." *Guerrero*, 2023 U.S. Dist. LEXIS 109579, at *8-9. Accordingly, the Amended Complaint sufficiently alleges the necessary basis for standing, and this Court should disregard Defendant's arguments otherwise.

**B.     BECAUSE PLAINTIFF HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED, DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED.**

Seeking dismissal of the Complaint under Rule 12(b)(6), Defendant argues that "[t]he

weight of national authority holds that places of public accommodation must be physical spaces, or at least have a nexus to a physical space." Def. Mem. at pg. 7. However, this Court is not bound by "national authority." Rather, one only need to look to precedent in this Circuit to determine that for purposes of cases that are brought before the U.S. District Court for the Southern District of New York such as this one, the question is all but settled inapposite to Defendant's position.

      i.    <u>Defendant's Website is a place of public accommodation under applicable law.</u>

Defendant spills considerable ink in attempting to convince this Court that in order to be subject to Title III of the ADA, a website must have a nexus with a physical location. Defendant cites to both cases outside of this District and certain cases in the Court's sister districts that are recognized as the minority and are factually distinguishable and further suggests the manner in which this Court should interpret the applicable statutes. *See* Def. Mem. at pp. 6-16. But Defendant fails to account for the strong judicial trend that continues in this District demonstrated by decisions that directly engage in intensive statutory analysis to determine the issue, and concluded that stand-alone websites are places of public accommodation for purposes of ADA protection. *See, e.g.*, *Tavarez v. Moo Organic Chocolates*, LLC, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 154249, at *4 (S.D.N.Y. Aug. 26, 2022) (analyzing the language and intent of the ADA and holding that "this Court concurs with the vast majority of other judges in this District who have decided the issue that a 'place of public accommodation' includes public-facing websites that are not tethered to a physical location"); *see also id*. at *4, fn. 2 (noting that "at least seven of [the court's] colleagues, one of whom has since ascended to the Second Circuit, have found that Title III of the ADA applies to websites" (citing cases).

Further, a finding that a stand-alone website is not a place of public accommodation would effectively ignore the reality that internet shopping poses, especially to visually-impaired consumers, and would work directly against the express congressional intent of the ADA. As stated succinctly by the Court in *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 344 (S.D.N.Y. 2023):

> A holding today that limits places of public accommodation to the brick-and-mortar standard would severely hamper Congress' effort to protect disabled persons who want and need access to the growing number of online-only providers of goods and services. Such an anomalous result could not have been Congress' intention. *See S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (counseling against interpreting a statute in a way that yields an absurd result). In fact, the ADA was meant to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). For this reason, as this Court previously determined, a stand-alone website qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal enjoyment.

*See also Guerrero v. Ellusionist.Com, Inc.*, No. 22-cv-2465 (ER), 2023 U.S. Dist. LEXIS 97870, at *8-9 (S.D.N.Y. June 6, 2023) ("If the statute were interpreted narrowly to preclude the 'vast world of Internet Commerce' from being considered a place of 'public accommodation,' Congress' purpose in adopting the ADA would be frustrated") (*citing Del-Orden v. Bonobos, Inc.,* 2017 U.S. Dist. LEXIS 209251, at *2 (S.D.N.Y. Dec. 20, 2017)).[4]

Indeed, this Court has already considered the overall position of courts in the Second Circuit, as well as the circumstances that would result in the event Defendant's reasoning would be applied. In *Dominguez v. Banana Republic, LLC*, this Court noted the following:

> As a threshold matter, courts in the Second Circuit generally agree that Title III's prohibition on discrimination in places of "public accommodation" extends to private commercial websites that affect interstate commerce. *See Harty v. Nyack Motor Hotel Inc.*, No. 19-CV-1322 (KMK), 2020 U.S. Dist. LEXIS 40429, 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020) (citing cases). Those courts have relied on a combination of persuasive authority from the First and Seventh Circuits, the ADA's text and legislative history, as well as an

---

[4] It should be noted that Defendant explicitly relies on both *Chalas v. Pork King Good* and *Guerrero v. Ellusionist.Com, Inc.*, but only where it suits Defendant's purposes. *See* Def. Mem. at p. 16.

> instructive Second Circuit case, *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), opinion amended on denial of reh'g, 204 F.3d 392 (2d Cir. 2000), applying the ADA to insurance services, to determine that the list of businesses covered by section 12181(7) would include private commercial websites even if those websites existed entirely online and had no nexus to a physical storefront. *See Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 388-98 (E.D.N.Y. Aug. 1, 2017); Del-Orden v. Bonobos, Inc., No. 17 CIV. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at *7-10 (S.D.N.Y. Dec. 20, 2017); *Scribd Inc.*, 97 F. Supp. 3d at 571 ("The fact that the ADA does not include web-based services as a specific example of a public accommodation is irrelevant because such services did not exist when the ADA was passed and because Congress intended the ADA to adapt to changes in technology . . . . Notably, Congress did not intend to limit the ADA to the specific examples listed and the catchall categories must be construed liberally to effectuate congressional intent.")
>
> This Court agrees with that construction for largely the same reasons articulated in those opinions. As Judge Weinstein persuasively articulated in Blick Art Materials, a test that determined whether a website is subject to the ADA by analyzing whether and to what extent the website impedes a "plaintiff's access to a specific, physical, concrete space, and establishes some nexus between the website and the physical place of public accommodation" is both unworkable and would produce absurd results. Blick Art Materials, 268 F. Supp. 3d at 396 (quotation omitted).

*Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 771 (S.D.N.Y. 2020) (Woods, J.)

The cases out of this Court's sister districts on which Defendant relies are in the *minority* of cases in the Second Circuit. *See Chalas*, 673 F. Supp. 3d 339 at 343 ("In contrast, *Winegard v. Newsday LLC*, a recent case in the Eastern District of New York, agreed with the *minority of the website ADA cases in the Second Circuit* and declined to extend Title III protections to stand-alone websites") (emphasis added). As reflected by opinions of this Court and expressly recognized by other courts in this District, the analyses presented by the minority holdings are less than compelling. *See Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 19 (S.D.N.Y. 2022) ("For the following reasons, this Court does not find Winegard's reasoning compelling") (*listing reasons*).

Further, the cases are also factually distinguishable. The website at issue in *Martinez*, for example, provided users with "the ability to create an account and purchase a subscription to

manage, improve, and learn about one's online reputation." *Martinez v. Mylife.com, Inc.*, 2021 U.S. Dist. LEXIS 210585, at *2 (EDNY Nov. 1, 2021). Given the nature of the website, the court in *Martinez* found itself unable to construe the term "sales establishment" to include a website selling web-based services, as was the subject website in that case. *Id.*, at *5-6. This is strikingly distinct from Defendant's Website, which sells physical products to consumers.

While Defendant suggests that statutory interpretation compels a finding that stand-alone websites not being covered by the ADA (*see* Def. Mem. at p. 13, instructing this Court to "apply the canons of *noscitur a sociis* and *ejusdem generis*"), the overall state of applicable case demonstrate that that a brick-and-mortar presence is not necessary, and thus, that the ADA is not ambiguous. *See, e.g., Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *19 (N.D.N.Y. Aug. 10, 2022) (*citing cases* and holding "[t]hese decisions indicate that a brick-and-mortar presence is not necessary. Therefore, the Court rejects the Defendant's theory of the canon of *ejusdem generis* in this case").

To summarize, "[c]ourts in the Second Circuit have found that it would be absurd to exclude cyberspace from the ADA's mandate." *Dominguez*, 613 F. Supp. 3d 759, 772 (Woods, J.) Given the clear judicial trend and well-documented congressional intent in establishing the ADA, Defendant's arguments, including Defendant's instructions on statutory interpretation, are misplaced.

**C. BECAUSE DEFENDANT HAS FAILED TO DEMONSTRATE SUFFICIENT GROUNDS FOR DISMISSAL OF THE FEDERAL ADA CLAIM ASSERTED BY THE AMENDED COMPLAINT, THE REQUEST FOR DECLARATORY RELIEF, THE STATE LAW CLAIMS, AND NEW YORK CITY LAW CLAIMS MUST BE SUSTAINED**

On the basis of its standing and 12(b)(6) challenges, Defendant next asserts that the Court

must likewise dismiss the request for declaratory relief, the New York State law claims and New York City law claims. Def. Mem. at pp. 16-17.  However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action. Accordingly, Defendant's attempts at obtaining a dismissal of the request for declaratory relief, the New York State law claims and the New York City law claims should likewise be denied.

## V.     **CONCLUSION**

For the reasons set forth, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated:     Hicksville, New York
           April 26, 2024

> MARS KHAIMOV LAW, PLLC
> *Attorneys for Plaintiff*
>
> /s/ Mars Khaimov
> By: Mars Khaimov, Esq.
> 100 Duffy Ave., Suite 510
> Hicksville, New York 11801
> Tel (929) 324-0717
> Fax (929) 333-7774
> Email: mars@khaimovlaw.com