IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SANJAY SOOKUL, individually and on behalf of all
others similarly situated,

                                      Plaintiff,

                       -against-

FRESH CLEAN THREADS INC.,

                                     Defendant.
-------------------------------------------------------------------X

Case No.: 1:23-cv-10164-GHW

DEFENDANT'S REPLY
MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS
<u>AMENDED COMPLAINT</u>

Defendant Fresh Clean Threads Inc. ("FCT") submits this reply memorandum in support of its Motion to Dismiss, Doc. 16 (the "Motion"). For the reasons set forth herein, Plaintiff's arguments for denial of the motion are not compelling, and this Court should grant the requested dismissal.

## I.     Plaintiff Falls Short of *Calcano's* Standing Requirements.

Deciding whether Plaintiff has plausibly alleged standing is a context-specific task that requires this Court apply its judicial experience and common sense. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74-75 (2d Cir. 2022). Plaintiff's argument that the Second Circuit's *Calcano* decision does not apply here because it dealt with alleged failures to carry Braille gift cards is unconvincing. Doc. 17 at 10 n. 2. This distinction is relevant, if at all, to the "public accommodation" issue, and Plaintiff offers no reason why *Calcano's* holdings as to standing are not equally applicable here. Rather, *Calcano* "raised the bar appreciably for adequately pleading standing" in ADA cases, and district courts have routinely applied it to website accessibility litigation. *See, e.g., Tavarez-Vargas v. Annie's Publ'g, LLC*, 2023 U.S. Dist. LEXIS 42955, at *5 (S.D.N.Y. Mar. 14, 2023); *see also Hennesssy v. Poetica Coffee Inc.*, No. 21-CV-5063, 2022 U.S. Dist. LEXIS 161376, at *9-14 (E.D.N.Y. Sep. 7, 2022) (discussing district court reactions to *Calcano*).

The ultimate question is whether Plaintiff has pled enough to "nudge his complaint across the line from conceivable to plausible[.]" *Loadholt v. Dungarees, Inc.*, No. 22-CV-4699, 2023 U.S. Dist. LEXIS 26006, at *6, 2023 WL 2024792 (S.D.N.Y. Feb. 15, 2023) (finding plaintiff's allegation that he unequivocally intends to purchase from defendant failed to meet this standard). As explained in the Motion and below, Plaintiff has not done so.

Plaintiff asserts that *Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6 (S.D.N.Y. Mar. 6, 2023) controls. "That case, however, relied in large part on reasoning from pre-*Calcano* decisions that held a plaintiff could establish standing by alleging in conclusory fashion when they attempted to access a website, what they were prevented from doing, and how they intended to use it in the future." *Loadholt v. Oriental-Decor.Com Inc.*, No. 22-CV-8205, __ F.Supp.3d __, 2024 U.S. Dist. LEXIS 2293, at *15, 2024 WL 78243 (S.D.N.Y. Jan. 4, 2024), *adopted Loadholt v. Oriental-Decor.Com Inc.*, No. 22-CV-8205, 2024 U.S. Dist. LEXIS 11506, 2024 WL 247107 (S.D.N.Y. Jan. 23, 2024).

Many district courts post-*Calcano* have endorsed FCT's position and dismissed complaints with allegations remarkably similar to those made here. *Oriental-Decor.Com*, 2024 U.S. Dist. LEXIS 2293, at *10 ("[Plaintiff] merely alleges that he visited the website twice to browse and potentially purchase Defendant's products online. [Plaintiff] therefore has not met his burden to demonstrate that he has Article III standing."); *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022) (ordering plaintiff to either seek to file a second amended complaint or show cause why case should not be dismissed *sua sponte* for lack of standing);[1] *Dungarees*, 2023 U.S. Dist. LEXIS 26006, at *5 (allegations that plaintiff visited website on two occasions to potentially purchase some belts and a jacket did not establish standing); *Fontanez v. Valley Lahvosh Baking Co.*, No. 1:22-cv-5537, 2023 U.S. Dist. LEXIS 149437, at *6-7 (S.D.N.Y. Aug. 22, 2023) (allegations plaintiff visited website five times to purchase package because "it . . . . includes both heart-shaped cracker flavor options and . . . is sold at a reasonable price" were insufficient to create standing); *Cromitie v. Imperial Wholesale, Inc.*, No. 1:22-cv-6919, 2023 U.S. Dist. LEXIS 149520, at *5-8 (S.D.N.Y. Aug. 22, 2023) (claims that plaintiff visited website three

---

[1] Notably, Plaintiff relies on *Moo Organic Chocolates* for the conclusion that websites are public accommodations. Doc. 17 at 17.

times to shop for some tablecloths and napkins did not create standing); *Loadholt v. Game Goblins, LLC*, 2023 U.S. Dist. LEXIS 164876, at *6, 2023 WL 6066220 (S.D.N.Y. Sep. 18, 2023) (allegations that plaintiff visited website three times to browse the store and potentially purchase some board games insufficient to create standing); *Annie's Publ'g*, 2023 U.S. Dist. LEXIS 42955, at *6; *Martin v. Second Story Promotions, Inc.*, No. 1:22-cv-10438, 2024 U.S. Dist. LEXIS 32639, at *9, 2024 WL 775140 (S.D.N.Y. Feb. 26, 2024); *Feliz v. IHealth Labs Inc.*, No. 23-cv-00354, 2024 U.S. Dist. LEXIS 16296, at *11, 2024 WL 342701 (S.D.N.Y. Jan. 30, 2024); *Suris v. Crutchfield New Media, LLC*, No. 1:22-cv-06961, 2023 U.S. Dist. LEXIS 96603, at *7-9, 2023 WL 3792512 (E.D.N.Y. June 2, 2023) (noting that plaintiff's recitation of the products defendant sold on its website did not demonstrate specificity required for standing).[2]

These courts also heed *Calcano's* direction to consider the broader context of the pleadings before them. As here, "[t]he broader context in which Plaintiff[] [has] prosecuted this action—and others—further undermines [his] assertions of claimed injury in fact." *Second Story Promotions*, 2024 U.S. Dist. LEXIS 32639, at *8. Or as the Honorable Judge Caproni explained, "the Court also is not required to ignore reality." *Dungarees*, 2023 U.S. Dist. LEXIS 26006, at *6 n.7. Considering the volume of Title III litigation instituted by that plaintiff, Judge Caproni concluded "[w]hile [plaintiff] may genuinely have wished to buy products or services from each of those websites [when the suits were filed], this Judge is skeptical." *Id.*

---

[2] It is not clear that Plaintiff's pleading would have established standing even pre-*Calcano*. *See Jaquez v. Aqua Carpatica USA, Inc.*, No. 20 CV 8487, 2021 U.S. Dist. LEXIS 157918, 2021 WL 3727094, at *4 (S.D.N.Y. Aug. 20, 2021) ("It is not sufficient to claim that [plaintiff] suffered an injury in fact by casually going on the website with the intent of browsing and potentially purchasing a product without identifying the product that [plaintiff] was prevented from purchasing."); *Guglielmo v. Neb. Furniture Mart, Inc.*, No. 19 CIV. 11197, 2020 U.S. Dist. LEXIS 238707, 2020 WL 7480619, at *4 (S.D.N.Y. Dec. 18, 2020) (finding that plaintiff lacked standing in part because he did "not identify the goods that he intended to purchase on any of his visits to the Website").

Though Plaintiff correctly notes that his other litigation activity is not dispositive, this Court should not ignore it as he suggests.[3] As the slew of cases cited above explain, consideration of this broader context is proper - if not required - under *Calcano*. These considerations prevent abusive litigation behavior. After all, "[t]o find standing on the paltry allegations here would allow any sensory-impaired person to sit down at their computer, visit 50 websites (possibly after being referred to them by their non-sensory-impaired lawyer), and bring 50 lawsuits. Standing requires more." *Winegard v. Golftec Intellectual Prop. LLC*, 674 F. Supp. 3d 21, 25 (E.D.N.Y. 2023).

In conclusion, Plaintiff's allegations are insufficient to establish standing under the standard set forth in *Calcano*. This Court should grant the Motion and join the other district courts dismissing similar allegations for lack of standing.

## II.   Plaintiff's Arguments for Extension of Title III to Websites are Questions of Policy for the Legislature, Not This Court.

As this Court has acknowledged, "[c]ourts are charged with interpreting the actual text of the laws Congress enacts, and not with rewriting or expanding the scope of the laws in the absence of statutory text, no matter how much one may think it may advance purported remedial goals or represent congressional intent." *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 772 (S.D.N.Y. 2020) (quoting *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 412 (2d Cir. 2019)). Plaintiff and FCT strongly disagree on how Title III's definition of "place of public accommodation" should be interpreted, and thus whether FCT's Website is subject to Title III in the first instance.

Plaintiff leads by arguing that this Court is not bound by "national authority." But it is also not bound by the decisions of its sister courts in this District. In the absence of controlling authority,

---

[3] Plaintiff filed another batch of 11 Title III website cases on April 29th and 30th, bringing him to a total of approximately 78 cases filed in this District since January 2023.

this Court is free to consider the analysis of courts within and without the Southern District in construing the definition of "public accommodation."[4] And contrary to Plaintiff's argument that FCT's position is the minority, as explained in the Motion standalone websites are not "public accommodations" in the majority of the courts in this country. *See* Doc. 16 at 15 n. 4.

Nor does the analysis advanced in *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. Aug. 1, 2017) control here. As noted in the Motion, the defendant in *Blick* operated physical stores and thus any questions regarding the applicability of Title III to its website resolved cleanly under existing Second Circuit precedent. Doc. 16 at 14. Judge Weinstein's further analysis referenced by this Court in its *Banana Republic* decision, being unnecessary to reach the ultimate holding, is dicta and thus should carry less weight in this Court's consideration. 613 F. Supp. 3d, at 771.

Even so, the threatened absurd results advanced in *Blick* flows directly from *Blick's* factual inapplicability here. *Banana Republic*, 613 F. Supp. 3d, at 771 (quoting *Blick*, 268 F. Supp. 3d, at 396).[5] The hypothetical situations describe a store with different legal obligations to customers depending on whether the customers engage with the store at a physical location or online. *Id.* But these concerns over consistency of obligations evaporate here—because FCT has no physical stores. There is no threat of absurdity due to potential inconsistency, which disarms this logic for extending Title III to standalone websites.

---

[4] This Court noted that other Southern District cases relied on "persuasive authority from the First and Seventh Circuit" in resolving the question. *Banana Republic*, 613 F. Supp. 3d, at 771. Consideration of persuasive authority from other circuits is entirely appropriate. Plaintiff's argument that such consideration is improper is meritless. Plaintiff's implied contention that FCT's counsel has violated its duty of candor by citing authority outside the Southern District is similarly not well taken. *See* Doc. 17 p. 1.

[5] *Del-Orden v. Bonobos Inc.*, also cited in *Banana Republic*, is similarly factually inapplicable because "Bonobos operate[d] through the website Bonobos.com, as well as through 38 brick-and-mortar stores in the United States." 2017 U.S. Dist. LEXIS 209251, at *2-3, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017).

Plaintiff cites to this Court's statement that "courts in the Second Circuit have found that it would be absurd to exclude cyberspace from the ADA's mandate." *Banana Republic*, 613 F. Supp. 3d, at 772.[6] Any such absurdity is a matter of policy, not statutory interpretation. Even if the ADA is a remedial statute entitled to broad interpretation, this Court cannot go beyond its statutory text "no matter how much one may think it may advance purported remedial goals or represent congressional intent." *Id.* As explained in the Motion, Plaintiff asks this Court to write a new covered entity into the text of Title III. Plaintiff's preferred construction "requires more than just a broad construction of Title III—it requires a rewrite of Title III entirely." *Id.* Even if Plaintiff's position serves a noble policy goal, good intentions do not justify this Court straying from the text of Title III.

As a digital-based business, FCT understands that e-commerce plays an important role in American society. How this industry should be regulated is a matter of policy that must be decided by the input of a variety of stakeholders along with the public, such that a balance of interests can be struck after careful consideration. "The very difficulty of these policy considerations, and Congress' superior institutional competence to pursue this debate, suggest that legislative not judicial solutions are preferable." *Pappas v. Giuliani*, 118 F. Supp. 2d 433, 443 (S.D.N.Y. 2000) (quoting *Patsy v. Board of Regents*, 457 U.S. 496, 504 (1982)). "And courts are perhaps especially ill-equipped to make policy in the ADA context." *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 183 (E.D.N.Y. 2021). The role of expanding the scope of Title III belongs to Congress, not to the courts.

---

[6] In addition to *Blick* and *Bonobos*, discussed above, this Court also referred to *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 571 (D. Vt. 2015) for its proposition that the ADA should be extended to websites because internet services were not contemplated by Congress when the ADA was enacted. As Judge Komitee explained, "[t]his is not really true." *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 177-78 (E.D.N.Y. 2021) (also noting Congress has not amended Title III to cover standalone websites despite evolution of the internet).

Therefore, FCT respectfully disagrees with those courts in the Southern District who have adopted Plaintiff's preferred position. Instead, FCT asks this Court to adopt the well-reasoned analysis of the plethora of courts which have held that standalone websites are not places of public accommodation and grant FCT's Motion.

### III.    Plaintiff's State and Local Law Claims Still Fail on the Merits.

Plaintiff argues that FCT's jurisdictional grounds for dismissal of his state and local law claims should not succeed. However, Plaintiff does not address the substantive defects in these claims. As explained in the Motion, a claim for declaratory relief is properly dismissed as redundant. Doc. 16 at 16. As for the New York state and city law claims, these causes all fail because Plaintiff fails to allege that he requested and did not receive an accommodation, which is a necessary element of all such claims. Doc. 16 at 17. Therefore, even if Plaintiff's ADA claim survives, his state and local law claims are still subject to dismissal on their merits.

### CONCLUSION

Despite his arguments to the contrary, the allegations of the Amended Complaint do not move Plaintiff's claims from conceivable to plausible. When considered in context, which properly includes his repeat litigant behavior, his pleadings fall below the raised bar for standing established by the Second Circuit in *Calcano*.

Nowhere in the text of Title III are standalone websites addressed as places of public accommodation. Plaintiff's arguments for this Court to re-write Title III to include FCT's website are ultimately considerations of policy best left to Congress. Even if laudable, policy motivations do not allow this Court to depart from the text of the statute. Therefore, this Court should find that standalone websites are not within the scope of Title III for the reasons explained in FCT's Motion.

Finally, Plaintiff has not addressed the substantive deficiencies in his state and local law claims and these remain subject to dismissal. For these reasons, and those set forth in the Motion, this Court should dismiss the Amended Complaint in its entirety.

Dated: May 3, 2024

Respectfully submitted,

_____
Adam C. Losey, Esq.
N.Y. Bar No. 4848867
LOSEY PLLC
44 Court Street, Suite 1217,
Brooklyn, NY 11201
(407) 906-1605
alosey@losey.law
docketing@losey.law
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system this 3rd day of May 2024, which will provide notice and copy hereof to all counsel of record.

_____
Adam C. Losey, Esq.
N.Y. Bar No. 484886