UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/16/2024
```

-------------------------------------------------------------------- X
                                   :

SANJAY SOOKUL, *on behalf of himself and all others similarly situated*,   :

                         :

                Plaintiffs,   :

                         :

       -against-   :

                         :

FRESH CLEAN THREADS, INC.,   :

                         :

            Defendant.   :

                         :

-------------------------------------------------------------------- X

1:23-cv-10164-GHW

<u>MEMORANDUM OPINION
& ORDER</u>

GREGORY H. WOODS, District Judge:

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), prohibits discrimination against individuals with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff Sanjay Sookul ("Plaintiff") is legally blind. Defendant Fresh Clean Threads Inc. ("Defendant") is an online retailer that sells clothing exclusively through its website. Plaintiff brings an ADA claim alleging that Defendant's website is inaccessible to him and others who are visually impaired.

The principal question before the Court is whether a website that bears no connection to a physical place is nonetheless a "place of public accommodation" within the meaning of Title III. Because it is not, Defendant's motion to dismiss is GRANTED.

## I.    BACKGROUND[1]

Plaintiff is a "visually impaired and legally blind person who requires screen-reading software to read website content." FAC ¶ 2. Defendant is an online clothing retailer that sells clothes

---

[1] The facts are taken from the First Amended Complaint, Dkt. No. 11 ("FAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012); *Chambers v.*

exclusively through its website.  *Id.* ¶¶ 4–5.  Defendant has no brick-and-mortar location open to the public.  *See id.*

On October 20, 2023, Plaintiff allegedly "attempted to purchase a tee shirt" from Defendant's website after "his friend told him about the unique[] and high-quality clothing offered" on the site.  FAC ¶¶ 10, 38.  Plaintiff alleges that he was "unable to do so independently" because the website's accessibility software was insufficient.  *Id.* ¶¶ 32, 38.  Among other things, the website did not provide a text equivalent for pictures of its wares and did not properly label its "search" and "cart" buttons.  *Id.* ¶¶ 30, 34.  Plaintiff allegedly made two more attempts to purchase tee shirts from Defendant's website on October 28, 2023 and December 12, 2023, but again was unable to do so.  *Id.* ¶ 38.

Plaintiff alleges that he "intends on . . . completing a purchase on the website when Defendant removes the accessibility barriers from it," citing the quality of the website's tee shirts, its attractive price bundles, and its subscription service.  *Id.* ¶ 39.  Plaintiff has also "been recommended [Defendant's] brand by several friends."  *Id.* ¶ 40.

On November 20, 2023, Plaintiff filed this lawsuit on behalf of himself and a putative class of similarly disabled persons.  Dkt. No. 1.  On April 5, 2024, Plaintiff filed the FAC, which alleges violations of Title III of the ADA, 42 U.S.C. § 12181 et seq., FAC ¶¶ 53–68; the New York State Human Rights Law ("NYSHRL"), *id.* ¶¶ 69–83; the New York State Civil Rights Law ("NYSCRL"), *id.* ¶¶ 84–96; and the New York City Human Rights Law ("NYCHRL"), *id.* ¶¶ 97–108.  The FAC also seeks a declaration that the website's accessibility barriers violate the same laws.  *Id.* ¶¶ 109–11.

---

*Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On April 5, 2024, Defendant filed a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Dkt. No. 16 ("Mem."); Dkt. No. 17 ("Opp."); Dkt. No. 18 ("Reply").

## II.    LEGAL STANDARD

### A.  Standing

A district court must dismiss a claim under Rule 12(b)(1) if a plaintiff fails to allege facts sufficient to establish standing under Article III of the Constitution.  *See Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  The plaintiff bears the burden of "alleging facts that affirmatively and plausibly suggest that it has standing to sue."  *Id.* at 417 (quotation and alteration omitted).  Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Where, as here, "standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)) (cleaned up).

Constitutional standing has three "irreducible" elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations and quotations omitted).  Plaintiffs seeking injunctive relief must also demonstrate that the identified injury-in-fact presents a "real and immediate threat of future injury."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  "A plaintiff pursuing injunctive

relief may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). "Such 'threatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient.'" *Id.* at 74 (quoting *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)) (emphasis in original).

### B. Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)).

"To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001). Failure to adequately allege "an essential element" of a claim is grounds for dismissal under Rule 12(b)(6). *Schneider v. Pearson Educ., Inc.*, No. 12 CIV. 6392 JPO, 2013 WL 1386968, at *5 n.6 (S.D.N.Y. Apr. 5, 2013) (internal quotation marks and citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550

U.S. at 570).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Plaintiff alleges violations of the ADA, the NYSHRL, the NYSCRL, and the NYCHRL. The Court first addresses whether Plaintiff has standing to bring these claims, then addresses whether Plaintiff has adequately pleaded them.

## III.    DISCUSSION

### A.  Standing

#### a.  Standing under the ADA

Plaintiff has met his burden of demonstrating standing at this stage.  "In the ADA context, . . . a plaintiff seeking injunctive relief has suffered an injury in fact when: '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location.'" *Calcano*, 36 F.4th at 74 (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)) (alteration in original).  "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prod., Inc.*, No. 20-CV-10167 (AJN), 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021) (collecting cases).

Prolific ADA plaintiffs are not subject to a heightened standing inquiry merely by virtue of "filing duplicative lawsuits against multiple defendants." *Delacruz v. Ruby Tuesday, Inc.*, No. 19-CV-10319 (KMW), 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8, 2020) (quoting *Mendez v. Apple Inc.*, No. 18-cv-7550, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019)).  Still, it is the plaintiff who "bears

the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue," *Calcano*, 36 F.4th at 77 (quoting *Cortlandt*, 790 F.3d at 417), and "[a]ssessing plausibility is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense,'" *id.* (quoting *Iqbal*, 556 U.S. at 679). The Second Circuit recently cautioned in *Calcano* that "transparent cut-and-paste and fill-in-the-blank" standing allegations may be less plausible coming from repeat ADA plaintiffs. *Id.* (observing that the "backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury"). The *Calcano* court dismissed five nearly identical complaints alleging that the defendants' stores violated the ADA by failing to offer braille gift cards. *Id.* at 71–72. It found the plaintiffs' standing allegations implausible because they "offered only 'naked assertions' of intent to return to [d]efendants' stores," and because they were filled with "errors, oddities, and omissions" reflecting their "mass production." *Id.* at 77–78.

Following *Calcano*, some courts in this district have required even more detail in complaints submitted by prolific ADA-website plaintiffs. *See, e.g.*, *Loadholt v. Dungarees, Inc.*, No. 22-CV-4699 (VEC), 2023 WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023) ("Courts in this circuit have recognized that the Second Circuit's recent *Calcano* decision raised the bar appreciably for adequately pleading standing . . . in ADA cases." (internal quotation marks and citations omitted)); *Hennessy by & through Hennessy v. Poetica Coffee Inc.*, 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) (same) (collecting cases). For example, in addition to the standard elements of standing, prolific plaintiffs have been required to allege which of the defendant's goods they were interested in and why, as well as why they intend to return to the defendant's website once its accessibility barriers are removed. *See, e.g.*, *Loadholt*, 2023 WL 2024792, at *3 & n.7 (noting that such detailed pleading would not apply "in every ADA case"); *Tavarez-Vargas v. Annie's Publ'g, LLC*, No. 21 CIV. 9862 (AT), 2023 WL 2499966, at *3 (S.D.N.Y. Mar. 14, 2023); *see also Calcano*, 36 F.4th at 76–77 (noting the complaints provided no

6

"details about [plaintiffs'] past visits or the frequency of such visits," did not "specify which stores [plaintiffs] visited," and did not "say why they wanted to purchase braille gift cards . . . immediately" once defendants began offering them).

As Defendant points out, Plaintiff is a prolific ADA litigant. Mem. at 4. The Court has found at least 78 recent cases in this district where he is the plaintiff in an ADA suit, often using complaints with very similar language to this one.[2] Plaintiff is far from the only such litigant in the Southern District of New York. But while "[f]iling serial, formulaic complaints may, in practice, sometimes mean the final product does not contain sufficient non-conclusory allegations to survive a motion to dismiss . . . that fact does not entitle Plaintiff to a weaker presumption that the non-conclusory allegations in the FAC are true." *Guerrero v. Ogawa USA Inc.*, No. 22 CIV. 2583 (LGS), 2023 WL 4187561, at *3 (S.D.N.Y. June 26, 2023).[3] Despite Defendant's arguments, in this Court's view, *Calcano* and its progeny do not hold otherwise. Those cases are concerned with uncareful ADA plaintiffs who fail, in their haste to file more lawsuits, to submit a complaint with allegations that are coherent and detailed enough to "nudge their claims 'across the line from conceivable to plausible.'" *Calcano*, 36 F.4th at 76 (quoting *Iqbal*, 556 U.S. at 680).[4]

---

[2] In resolving a 12(b)(6) motion, a court may take judicial notice of "pleadings in other lawsuits." *Campos v. Aegis Realty Mgmt. Corp.*, No. 19 CIV. 2856 (KPF), 2020 WL 433356, at *4 (S.D.N.Y. Jan. 28, 2020) (quoting *Rosado-Acha v. Red Bull Gmbh*, No. 15 Civ. 7620 (KPF), 2016 WL 3636672, at *6 (S.D.N.Y. June 29, 2016)).

[3] The Court is required to accept the well-pleaded facts in a complaint as true at the motion to dismiss stage. *See, e.g., Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Fed. R. Civ. P. 11 provides a vehicle for the Court to sanction a plaintiff and their counsel if they knowingly make false statements to the Court in a complaint. *E.g., O'Brien v. Alexander*, 898 F. Supp. 162, 174–75 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996).

[4] In arguing that Plaintiff does not have standing, Defendant cites exclusively to such cases. *See Calcano* at 77–78 (dismissing plaintiffs' complaints because they offered only "naked assertions of intent to return, and because they were filled with "errors, oddities, and omissions . . . as a result of their mass production" that "confirm[ed] the implausibility of their claims of injury"); *see also, e.g., Tavarez-Vargas*, 2023 WL 2499966, at *2–3 (dismissing complaint that merely stated, in conclusory fashion, that plaintiff "unequivocally intends to return to the website . . . as soon as the accessibility barriers are cured"); *Loadholt v. Game Goblins, LLC*, No. 22 CIV. 7367 (AT), 2023 WL 6066220, at *3 (S.D.N.Y. Sept. 18, 2023) (similar); *Loadholt v. Oriental-Decor.com Inc.*, No. 22CV8205ASRWL, 2024 WL 78243, at *4 (S.D.N.Y. Jan. 4, 2024), *report and recommendation adopted*, No. 22-CV-8205 (AS), 2024 WL 247107 (S.D.N.Y. Jan. 23, 2024) (similar); *Loadholt*, 2023 WL 2024792, at *2–*3 (similar, noting also that plaintiff failed to allege why defendant's website was the only place he could buy the products he desired); *Fontanez v. Valley Lahvosh Baing Co., Inc.*, No. 1:22-CV-5537 (MKV), 2023 WL 5390212, at *2 (S.D.N.Y. Aug. 22, 2023) (similar).

In any event, the FAC alleges enough to meet even the more uncompromising standards articulated by courts "skeptical" of prolific ADA plaintiffs. *Loadholt*, 2023 WL 2024792, at *3 n.7. All three elements of injury-in-fact "in the ADA context" are adequately pleaded. *Calcano*, 36 F.4th at 74. First, as to "past injury under the ADA," *Calcano*, 36 F.4th at 74, the FAC alleges that Plaintiff visited Defendant's website on multiple occasions to try to buy a tee shirt, including on October 20, 2023 and October 28, 2023.[5] FAC ¶ 38. Plaintiff allegedly did so because he wanted to "update his closet for the new season," and his friend recommended Defendant's website because it offered "unique[] and high-quality clothing" at "affordable prices." *Id.* ¶ 10. Plaintiff alleges that he was specifically interested in the website's multi-pack offerings of three or five tee shirts, as well as its subscription services. *Id.* ¶¶ 10, 39. Second, as to whether "it [is] reasonable to infer that the discriminatory treatment [will] continue," *Calcano*, 36 F.4th at 74, Plaintiff alleges that on each of his visits to Defendant's website he encountered specific accessibility issues preventing him from purchasing a tee shirt, including a lack of text equivalent for pictures of the website's offerings and a lack of text labels on important buttons like "search" and "cart." *Id.* ¶¶ 30, 34. Plaintiff also alleges that Defendant "refuses to fix the access barriers" that prevented Plaintiff from navigating its website. *Id.* ¶ 40. And third, as to whether "it [is] reasonable to infer . . . that plaintiff intend[s] to return" to the website, *Calcano*, 36 F.4th at 74, Plaintiff alleges that he intends to visit Defendant's website once its accessibility barriers are removed, *id.* ¶ 39, and alleges plausible reasons why he

---

[5] Defendant emphasizes that Plaintiff's third alleged visit to its website, on December 12, 2023, FAC ¶ 38, came after Plaintiff brought this action. Mem. at 5–6. It is true that standing is based on "whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) (emphasis in original); *see also Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12 CIV. 6154 DLC, 2013 WL 4015901, at *7–*8 (S.D.N.Y. Aug. 7, 2013) (explaining that amended complaint could not cure standing defects in existence when suit was filed). But Defendant does not explain why two visits to its website, as opposed to three, would be insufficient to confer standing. Courts have found two website visits to suffice for purposes of alleging an injury-in-fact in ADA cases. *E.g.*, *Loadholt v. Shirtspace*, No. 22-CV-02870 (ALC), 2023 WL 2368972, at *2 (S.D.N.Y. Mar. 6, 2023); *Wahab v. White's Boots, Inc.*, No. 23 CIV. 9018 (JHR) (GS), 2024 WL 3909083, at *11 (S.D.N.Y. Aug. 16, 2024). And Plaintiff was clearly entitled to allege an additional visit to Defendant's website in the FAC. *See, e.g.*, *Abbatiello v. Monsanto Co.*, 571 F. Supp. 2d 548, 554 (S.D.N.Y. 2008) (crediting "additional allegations" included in amended complaint).

intends to do so, *id.* ¶¶ 39–40 (citing the "high-quality tee shirts," "multi-pack[]" offerings, and "subscription service" offered on Defendant's website, as well as recommendations of Defendant's brand "by several friends").

Multiple courts have declined to dismiss actions for lack of standing on nearly identical allegations, including after the Second Circuit issued *Calcano*. *See, e.g.*, *Loadholt*, 2023 WL 2368972, at *2–3 (finding plaintiff adequately pleaded standing by alleging that he made multiple visits to a website to buy a tee shirt, that he encountered specific accessibility barriers that prevented him from making a purchase, and that he intended to revisit the website in the future); *Davis v. Wild Friends Foods, Inc.*, No. 22-CV-04244 (LJL), 2023 WL 4364465, at *6–7 (S.D.N.Y. July 5, 2023) (similar, where plaintiff attempted to buy food products from defendant's website); *Donet v. Isamax Snacks, Inc.*, No. 123CV01286PAESDA, 2023 WL 6065626, at *5 (S.D.N.Y. Aug. 14, 2023), *report and recommendation adopted*, No. 23CIV1286PAESDA, 2023 WL 6066167 (S.D.N.Y. Sept. 18, 2023) (similar). Accordingly, Defendant's motion to dismiss Plaintiff's ADA claim for lack of standing is denied.

### b.  Standing under the NYSHRL, NYSCRL, and NYCHRL

"Plaintiff's New York State and City claims are governed by the same standing requirements as the ADA." *Mendez v. Apple Inc.*, No. 18 CIV. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) (collecting cases). Because Plaintiff has standing to bring suit under the ADA, he also has standing under the NYSHRL, NYSCRL, and NYCHRL.

For these reasons, the Court finds that Plaintiff has pleaded sufficient facts to establish standing for all of its claims. Defendant's motion to dismiss under Rule 12(b)(1) is therefore denied.

### B.  Failure to State a Claim under the ADA

Plaintiff has failed to state a claim under Title III of the ADA, because Defendant's standalone website is not a "place of public accommodation" subject to suit under Title III. Title III

provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, a plaintiff must allege (1) that he is "disabled within the meaning of the ADA"; (2) that the defendant owns, leases, or operates "a place of public accommodation"; and (3) that the defendant discriminated against him by denying him "a full and equal opportunity to enjoy the services defendant[] provide[s]." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

Plaintiff's disability and unequal access to Defendant's website are not disputed here. *See* Mem. at 12. The question, therefore, is whether Defendant's standalone website constitutes a "place of accommodation" within the meaning of Title III. *Id.* The plain text of the statute makes clear that it is not.

Title III defines places of public accommodation in Section 12181(7). In full, Section 12181(7) provides:

> (7) **Public accommodation.** The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance

office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C § 12181(7).

"When interpreting a statute, we begin with the text. We must give effect to the text's plain meaning." *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021). "[A]bsent ambiguity," interpretation of the statute "will generally end there." *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009) (quoting *Puello v. BCIS*, 511 F.3d 324, 327 (2d Cir. 2007)). Section 12181(7)'s text "must be broadly construed" because the ADA is "a remedial statute" and its stated purpose is to "provid[e] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks and citations omitted); 42 U.S.C. § 12101(b)(1). Even so, a broad reading of the text is still a reading of the text. "Appeals to broad remedial goals and congressional purpose are not a substitute for the actual text of the statute when it is clear." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 412 (2d Cir. 2019). And a statute's "statements of purpose . . . cannot override [its] operative language." *Sturgeon v. Frost*, 587 U.S. 28, 56–57 (2019) (internal quotation marks and citation omitted).

Section 12181(7) is obviously not limitless.  It applies only to the entities listed within it.
Had Congress intended Title III to apply to all businesses, Section 12181(7) would not be a list.
Instead, it would simply provide that Title III applies to "all businesses operating in interstate
commerce."  *See Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 177 (E.D.N.Y. 2021).  Accordingly,
for Plaintiff to state a claim, Defendant's website would have to fall somewhere within the list in
Section 12181(7).  It does not.

### a.  Relevant case law

Courts are divided as to whether standalone websites are places of public accommodation
under Title III.  The majority of circuits to address the issue—the Third, Sixth, Ninth, and
Eleventh—have concluded that they are not, because a place of public accommodation is a physical
establishment.  *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) ("[W]e do not find
the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical
access or even to be ambiguous as to their meaning."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006,
1010–11 (6th Cir. 1997) (concluding that Title III does not include "within its purview entities other
than physical places"); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (requiring
that a website to be connected to "an actual physical place" for Title III to apply); *Gil v. Winn-Dixie
Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir.), *opinion vacated on mootness grounds*, 21 F.4th 775 (11th
Cir. 2021) (holding that "pursuant to the plain language of Title III of the ADA, public
accommodations are limited to actual, physical places," and thus that "websites are not a place of
public accommodation").

Conversely, a minority of circuit courts of appeal—the First and Seventh—have read Title
III as extending to remote businesses, including websites.  *See Carparts Distribution Center, Inc. v.
Automotive Wholesaler's Association of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) ("The plain
meaning of the terms do not require 'public accommodations' to have physical structures for

persons to enter."); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (holding that "[t]he core meaning of [Section 12181(7)] is that the owner or operator of a store, . . . Web site, or other facility" is subject to Title III). The seminal case drawing this conclusion is *Carparts*, where the First Circuit determined that the inclusion of the term "travel service" in Section 12181(7)(F) renders Section 12181(7) "at worst, ambiguous" as to whether places of public accommodation must be physical locations, because "[m]any travel services conduct business by telephone or correspondence." 37 F.3d at 19; *see also Doe*, 179 F.3d at 559 (relying on *Carparts*). The court then considered "agency regulations," "public policy concerns," and "the legislative history of the ADA," and found that all three weighed against the exclusion from Title III of remote operations. 37 F.3d at 19–20.

The Second Circuit has not addressed whether standalone websites are places of public accommodation. Lacking on-point, binding precedent, district courts in this Circuit have looked to *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999). In that case, the Second Circuit held that an insurance office could be liable under Title III for refusing to sell a joint life-insurance policy to the plaintiffs on the basis of their mental disabilities. *Id.* at 29. But in *Pallozzi* there was no dispute that the insurance office was a place of public accommodation, as "Title III specifies an 'insurance office' as a 'public accommodation.'" *Id.* at 31 (quoting 42 U.S.C. § 12181(7)(F)). Instead, the issue was whether the defendant's insurance policies constituted "goods" or "services" regulated by Title III even though they "are not used in places of public accommodation." *Id.* at 32–33. The court held that Title III applied to the defendant's insurance policies, as the text of Title III prohibits "place[s] of public accommodation from discriminating against a disabled customer in the enjoyment of its goods and services" without limiting its applicability to "guarantee[ing] . . . mere physical access." *Id.* at 31–32.

Most district courts in this Circuit have taken *Pallozzi*'s refusal to read "goods and services" as limited to "mere physical access," *id.* at 33, as suggesting that "places of public accommodation" can also be read to extend beyond physical locations, including to standalone websites. *See, e.g.*, *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 343 (S.D.N.Y. 2023) ("The cases in this district that have extended Title III protections to stand-alone websites rely on an analogous Second Circuit decision, *Pallozzi*."); *Chalas v. Barlean's Organic Oils, LLC*, No. 22-CV-04178-CM, 2022 WL 17156838, at *15 (S.D.N.Y. Nov. 22, 2022) ("[T]he best guess, in light of *Pallozzi*, is that our Circuit, were it to consider the issue, would come down on the side of the First and Seventh Circuits, and conclude that a website can be a 'place of public accommodation.'"); *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 19 (S.D.N.Y. 2022) ("Judges who have held that Title III applies to websites that offer goods and services have relied upon *Pallozzi* in holding that the goods and services covered by the ADA are not limited to those sold at a physical location.").

Those cases overread *Pallozzi*. *Pallozzi* is a case about the "'goods' and 'services' provided by" a place of public accommodation under Title III. 198 F.3d at 31. It is not a case about the antecedent question of whether a place of accommodation can be a business without physical premises. *See id.* at 33 ("[M]any of the private entities that Title III defines as 'public accommodations' . . . sell goods and services that are ordinarily used *outside the premises*." (emphasis added)). The Second Circuit confirmed this in *Leonard F. v. Israel Disc. Bank of New York*, where it observed that *Pallozzi* left open the "question . . . whether Title III of the ADA has any application" where an insurance policy "was not purchased by [the plaintiff] at an insurance office"—*i.e.*, at a place of public accommodation. 199 F.3d 99, 107 n.8 (2d Cir. 1999) (noting that a plaintiff who received disability benefits from her employer may not have the "nexus to [defendant's] 'insurance office'" required to sustain a claim under Title III (quoting *Ford*, 154 F.3d at 612–613)). Several courts in this Circuit have adopted this reading of *Pallozzi*, and held that standalone websites are not

places of public accommodation under Title III.  *Mejia v. High Brew Coffee Inc.*, 1:22-CV-03667-LTS,

2024 WL 4350912, at *3 (S.D.N.Y. Sept. 30, 2024); *Winegard*, 556 F. Supp. 3d at 180–81; *Martinez v.*

*MyLife.com, Inc.*, No. 21-CV-4779 (BMC), 2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021).

"Because the issue is undecided in this Circuit, the Court turns to the statute."  *Tavarez v.*

*Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 368 (S.D.N.Y. 2022).  The Court finds that places

of public accommodation do not extend beyond physical locations to standalone websites, because

the plain text of the Section 12181(7) does not permit that result.

### b.  "Place" of Public Accommodation

To start, a website is not a "place of public accommodation" because a website is not a

"place."  Only "*places of public accommodation*" are subject to Title III.  *See PGA Tour, Inc. v. Martin*,

532 U.S. 661, 677 (2001); 42 U.S.C. § 12182(a).  "Dictionaries overwhelmingly define 'place' to mean

a physical location."  *Winegard*, 556 F. Supp. 3d at 179 (collecting dictionary authorities); *accord*

*Jingrong*, 16 F.4th at 57 (same); *see also Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534–35

(5th Cir. 2016) (same).  "Webster's Third, for example, begins with the following definitions: '1.

open space in a city, space, locality'; '1.a. a way for admission or transit'; '1.b. physical environment';

'1.c. physical surroundings.'"  *Winegard*, 556 F. Supp. 3d at 179 (quoting Webster's Third New

International Dictionary 1727 (2002)).  "Webster's Second, similarly, begins with:  'An open space,

or square, in a city or town.'"  *Id.* (quoting Webster's Second New International Dictionary 1877

(1945)).  The Court adds two definitions to those already gathered by other courts:  Merriam-

Webster's, whose first definition of "place" consists of "physical environment," "a way for

admission or transit," and "physical surroundings," *Place* 1a–c, Merriam-Webster,

https://www.merriam-webster.com/dictionary/place, and Cambridge Dictionary's, whose first

definition of "place" is "an area, town, building, etc.," *Place* A1, Cambridge Dictionary,

https://dictionary.cambridge.org/us/dictionary/english/place.

Unsurprisingly, given the plain meaning of the term, multiple courts analyzing the meaning of the term "place" have read it to invoke a physical location. For example, the Second Circuit in *Jingrong* noted that "[a] 'place' is a 'location,' 'a particular part of region of space,' 'a space that can be occupied.'" 16 F.4th at 57 (quoting *Place*, Oxford English Dictionary ("OED") (3d ed. 2006), https://www.oed.com/view/Entry/144864)) (interpreting the meaning of "a place of religious worship"). Moreover, in *Boy Scouts of America v. Dale*, the Supreme Court examined a New Jersey statute with the same language at issue here—"place of public accommodation"—and noted, albeit in dicta, that the word "place" was "tie[d] . . . to a physical location." 530 U.S. 640, 657 (2000) (addressing constitutionality of New Jersey's application of its public-accommodation law). And in *In re Cray, Inc.*, the Federal Circuit held that the phrase "regular and established place of business" within a venue statute required "a physical place" rather than "merely . . . a virtual space or . . . electronic communications from one person to another." 871 F.3d 1355, 1362 (Fed. Cir. 2017).

Defendant's business is run exclusively through its website. FAC ¶¶ 4–5. It has no physical premises open to the public. FAC ¶ 25; Opp. at 20. Defendant's website is therefore not a "place"—of public accommodation or otherwise—subject to Title III. *See Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) ("[T]he plaintiffs' argument that the prohibitions of Title III are not solely limited to 'places' of public accommodation contravenes the plain language of the statute.").

### c. Place of "Public Accommodation"

Moreover, even if websites were "places," they are not "public accommodations" under Title III. Only "place[s] of *public accommodation*" are subject to Title III. 42 U.S.C. § 12182(a) (emphasis added). "When 'place' is joined with 'of,' the phrase 'place of' may denote a 'place' whose defining feature or purpose is identified in the terms following the preposition 'of.'" *Jingrong*, 16 F.4th at 57 (collecting dictionary authorities).

"In the antidiscrimination context," the phrase "'public accommodation' has long referred to businesses with public-facing physical facilities." *Mejia*, 2024 WL 4350912, at \*4. At common law, the phrase "public accommodation" "referred to the particular subset of businesses that had heightened duties of service—often relating to lodging and transportation—because of the public nature of their physical facilities." *Winegard*, 556 F. Supp. 3d at 175–76 (citing *Vandewater v. Mills*, 60 U.S. 82, 87 (1856) (noting that passenger steamships were "for the public accommodation"); *Fanning v. Gregoire*, 57 U.S. 524, 529 (1853) (similar, addressing ferries); *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 554 (1837) (similar, addressing bridges)).

"The ADA's definition of 'public accommodation' is consistent with this history.'" *Id.* at 176. Section 12181(7) enumerates twelve categories "of private facilities that qualify as 'public accommodations' so long as their operations 'affect commerce.'" *Pallozzi*, 198 F.3d at 30 (quoting 42 U.S.C § 12181(7)). The categories are divided into separate subparagraphs, each of which provides specific examples followed by a residual clause. 42 U.S.C § 12181(7). Of the fifty specific examples, at least forty-nine are physical places. *See id.*; *Winegard*, 556 F. Supp. 3d at 177. "In order to be a place of public accommodation," Defendant's website "must fall within one of [the] 12 categories" in Section 12181(7). *Martinez*, 2021 WL 5052745, at \*2 (citation omitted).

### i.  Section 12181(7) Does Not Apply to Remote Businesses

Standalone websites are not included anywhere within the list of "public accommodations" provided by Congress. 42 U.S.C § 12181(7). As Plaintiff concedes, not only does Section 12181(7) not provide websites as an example of a public accommodation, only one of the fifty examples in Section 12181(7) is even arguably not a physical place. *See* Opp. at 19–20; *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("All the items [in Section 12181(7)] has something in common. They are actual, physical places."). Plaintiff relies entirely on the one possible textual hook for his position: "travel service," listed in the middle of Subparagraph (F). *See*

Opp. at 17; *see also Suvino v. Time Warner Cable, Inc.*, No. 16 CV 7046-LTS-BCM, 2017 WL 3834777, at *1 (S.D.N.Y. Aug. 31, 2017) ("All but one of the listed exemplars [in Section 12181(7)] clearly reference physical locations . . . [t]he lone exception is 'travel service,' which is included in the list of 'service establishment[s].'").

The term "travel service" is a thin reed on which to rest an argument that websites fall within Section 12181(7), and an analysis of the text, applying the traditional canons of statutory interpretation, makes plain that it cannot carry the weight of Plaintiff's argument. Plaintiff argues that "travel services" are not necessarily physical operations, and thus that "a brick-and-mortar presence" is "not necessary" for a business to qualify as a public accommodation under Title III. *Id.* at 17–18. According to Plaintiff, it follows that standalone websites qualify as public accommodations, in light of the ADA's broad mandate and purpose of "eliminat[ing] . . . discrimination against individuals with disabilities." *Id.* at 18 (quoting 42 U.S.C. § 12101(b)(1)).

Many district courts in this Circuit have made this same argument. *See, e.g., Tavarez*, 623 F. Supp. 3d at 369 ("Although websites are not specifically mentioned in the statute, the law's explicit purpose and the inclusion of providers that do not require physical entry into a location to access their goods and services indicate that websites are within the broad reach Congress intended Title III to have.")); *Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *10 (S.D.N.Y. Dec. 20, 2017) (similar, arguing that "[t]his construction, although not dictated by the ADA's text, is consistent with it; and it is compellingly supported by the ADA's purposes, legislative history, and context"). These cases generally rely on the First Circuit's opinion *Carparts*, which reasoned that, "[b]y including 'travel service' among the list of services considered 'public accommodations,' Congress clearly contemplated that 'service establishments' include providers of

services which do not require a person to physically enter an actual physical structure." 37 F.3d at 19;[6] *see, e.g.*, *Romero*, 580 F. Supp. 3d at 20.

The Court disagrees for several reasons. First, the term "travel service," as defined in Title III, is best understood to refer to a physical location, like all of the phrases that surround it. The term "travel service" must be interpreted in the context of its "surrounding words." *Yates v. United States*, 574 U.S. 528, 536 (2015); *see also Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604 (2d Cir. 2021) (reading a disputed term "such that its scope aligns with that of its listed companions."). The Supreme Court recently had the occasion to remind courts of the importance of this principle in *Fischer v. United States*, 603 U.S. ----, 144 S. Ct. 2176 (2024), where it held that the Sarbanes-Oxley Act did not apply to a defendant's conduct in breaching the Capitol on January 6, 2021. At issue in *Fischer* were two adjacent provisions in the Act: 18 U.S.C. § 1512(c)(1), which imposes criminal liability on anyone who corruptly "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding"; and 18 U.S.C. § 1512(c)(2), which extends that prohibition to anyone who "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." 144 S. Ct. at 2181. Applying customary methods of statutory construction, the Court held that the "otherwise" clause in subsection (c)(2) is limited by the list of criminal violations in subsection (c)(1),

---

[6] As discussed, *Carparts* also relied on "agency regulations" and "legislative history" to conclude that Section 12181(7) is not limited to physical locations. 37 F.3d at 19. Those interpretive methods have fallen out of favor since *Carparts* was issued. *See, e.g.*, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2270 (2024) (rejecting *Chevron* deference to agency interpretations of statutes); *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ("Even those of us who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))). It is worth noting, however, that neither method compels the conclusion that the ADA applies to standalone websites. The Department of Justice, despite arguing in congressional hearings and amicus briefs that standalone websites are places of public accommodation, has to date declined to exercise its rulemaking power "to issue any regulations on this topic." *See generally Martinez v. Cot'n Wash, Inc.*, 297 Cal. Rptr. 3d 712, 730 (Ct. App. 2022) (analyzing legislative history). Moreover, despite holding hearings "as early as 2000" regarding the importance of online commerce for the ADA, "when Congress amended the ADA in 2008, it did so to clarify a *different* area of judicial confusion interpreting the scope of the act related to the definition of 'disability.'" *See generally id.* at 728–29.

because "subsection (c)(2)'s 'surrounding words' suggest that we should not give this 'otherwise' provision the broadest possible meaning." *Id.* at 2190.

Two interpretive canons guided the *Fischer* Court's conclusion, both of which inform this Court's reading of Section 12181(7). First, "the canon of *noscitur a sociis* teaches that a word is 'given more precise content by the neighboring words with which it is associated,'" *id.* at 2183 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008), and thus "avoids ascribing to one word a meaning so broad that it is inconsistent with the company it keeps," *id.* at 2183–84 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (internal quotation marks and alterations omitted)). The Court found that, under *noscitur*, the "otherwise" clause in subsection (c)(2) could not be read to encompass offenses, like the defendant's, that were "so dissimilar from the previously enumerated examples" that they fell outside of the focus of the examples. *Id.* at 2184–85 (citing *Begay v. United States*, 553 U.S. 137, 144–45 (2008))). Moreover, "under the related canon of *ejusdem generis*, a general or collective term at the end of a list of specific terms is typically controlled and defined by reference to the specific classes that precede it." *Id.* at 2184 (quoting *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)) (internal quotations marks and citations omitted). The Court observed that if the "otherwise" clause encompassed "*all* obstructive acts," including the defendant's, "[t]he sweep of subsection (c)(2) would consume (c)(1), leaving that narrower provision with no work to do." *Id.* at 2183, 2185. Because "Congress would not go to the trouble of spelling out the list in (c)(1) if a neighboring term swallowed it up, the most sensible inference [was] that the scope of (c)(2) is defined by reference to (c)(1)." *Id.* at 2185.

The same principles compel a reading of "travel service" in Section 12181(7) as referring to a physical establishment. In Subparagraph (F), "travel service" is surrounded entirely by brick-and-mortar establishments: among others, a barber shop, a beauty shop, a shoe-repair service, a funeral parlor, and a gas station. 42 U.S.C. § 12181(7)(F). Some of the terms surrounding "travel service"

were crafted studiously to refer only to physical locations.  For example, Congress eschewed terms like "accounting firm," "law firm," and "health care practice" in favor of terms like "office of an accountant or lawyer" and "office of a health care provider."  *See Winegard*, 556 F. Supp. 3d at 177. And again, every single example in the other subparagraphs of Section 12181(7) is a physical location.  42 U.S.C. § 12181(7); *see also, e.g.*, *Gil*, 993 F.3d at 1276–77 ("No intangible places or spaces . . . are listed [in Title III]."); *Ford*, 145 F.3d at 614 ("The litany of terms [listed in Section 12181(7)] refer to places with resources utilized by physical access.").  If *noscitur* applies anywhere, it applies here.  Because every term surrounding "travel service" is a physical location, "travel service" must refer to a physical location as well, even if a contrary interpretation "may be literally permissible." *Fischer*, 144 S. Ct. at 2190; *see also Dubin v. United States*, 599 U.S. 110, 126 (2023) (reading a list element "in a similar manner to its companions" where it was "quite amenable to such a reading").

As confirmation, Subparagraph (F)'s residual clause refers to each member of that subparagraph—including "travel service"—as an "establishment."  42 U.S.C. § 12181(7)(F) (". . . or other service establishment"); *see Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (holding that gift cards "do[] not plausibly fall into the scope of [Title III]'s definition of a 'public accommodation'" in part because "the subject of the residual clause [in Section 12181(7)(B)] is 'establishment,'" not the goods that establishment provides).  The common meaning of "establishment" "includes not only a business but also the physical space that it occupies."  *See generally Magee*, 833 F.3d at 534–35 (collecting dictionary authorities).  For example, Merriam-Webster defines "establishment" as "a place of business or residence *with its furnishings and staff*."  *Establishment* 1.d, Merriam-Webster, https://www.merriam-webster.com/dictionary/establishment (emphasis added).  The New Shorter Oxford English Dictionary similarly "defines 'establishment' as '[a]n institution or business; the premises or personnel of this."  *Magee*, 833 F.3d at 535 (quoting *Establishment*, The New Shorter Oxford English Dictionary (1993)).  Moreover, the other uses of

"establishment" in Section 12181(7) refer to exclusively physical places:  among others, a bakery, a

grocery store, a shopping center, a day care center, a homeless shelter, and a food bank.  42 U.S.C.

§ 12181(7)(E); *id.* § 12181(7)(K).  To read the use of "establishment" in Subparagraph (F) as

referring to remote businesses would be implausible given its common meaning and its usage

elsewhere in Section 12181(7).  *See New York Currency Rsch. Corp. v. Commodity Futures Trading Comm'n*,

180 F.3d 83, 89 (2d Cir. 1999) (interpreting subparagraph with reference to "examples[] taken from

other provisions of the same statute").

For these reasons, the Court does not read Section 12181(7) as opening the door for "travel

services" to permit any non-physical operation like a website to fall within the statute's scope.  While

"in the abstract" a travel service may be either physical or remote, only the former is plausible in the

context of Section 12181(7).  *Pulsifer v. United States*, 601 U.S. 124, 133, 152–53 (2024) (choosing

between "two grammatically permissible" readings after "reviewing [the statute's] text in context");

*Fischer*, 144 S.Ct. at 2190 (rejecting "literally permissible" interpretation where it "defies the most

plausible understanding" of the statute).  The Court adopts the plausible reading:  a "travel service,"

like the other forty-nine examples in Section 12181(7), is a physical place of business.  *E.g.*, *Weyer*,

198 F.3d at 114 ("The principle of *noscitur a sociis* requires that the term, 'place of public

accommodation,' be interpreted within the context of the accompanying words, and this context

suggests that . . . an actual physical place is required.").

### ii.    Section 12181(7) Does Not Apply to Defendant's Website

To be clear, even if the term "travel service" could encompass "service[s] not limited to a

physical place," *Romero*, 580 F. Supp. 3d at 20, Defendant's website still falls nowhere within the list

in Section 12181(7).  Defendant is an online clothing retailer, not a travel service.  FAC ¶ 39.  It sells

"tee shirts, . . . hoodies, sweatpants, and other apparel."  *Id.* ¶ 18.  Its wares have basically nothing to

do with travel (though one might wear one of its "comfortable new shirts" on a long flight, *id.* ¶ 10).

Defendant's wares are not even "services," which is the defining element of the subparagraph where "travel service" resides.  42 U.S.C. § 12181(7)(F) (". . . or other *service establishment*" (emphasis added)).[7]

Moreover, if Defendant's retail website *did* fall within Section 12181(7), then Section 12181(7) would apply to virtually all online businesses—a result which the statute's text is at pains to avoid.  There is no limiting principle connecting "travel services" to retail websites that would sweep in large swaths of "the vast world of Internet Commerce."  *Guerrero v. Ellusionist.com, Inc.*, No. 22-CV-2465 (ER), 2023 WL 3847402, at *4 (S.D.N.Y. June 6, 2023) ("If [Section 12181(7)] were interpreted narrowly to preclude 'the vast world of Internet Commerce' from being considered a place of 'public accommodation,' Congress' purpose in adopting the ADA would be frustrated.").  To Plaintiff, and other courts in this Circuit, this would be a feature, not a bug, in light of "Congress' purpose in adopting the ADA."  Opp. at 18 (arguing that "a finding that a stand-alone website is not a place of public accommodation would effectively ignore the reality that internet shopping poses"); *see also, e.g.*, *Chalas*, 673 F. Supp. at 344 (holding that, given the ADA's purpose, "a stand-alone website qualifies as a place of public accommodation"); *Guerrero*, 2023 WL 3847402, at *4 (similar).

Section 12181(7) cannot be read to encompass such "a significant portion of the American economy" with so little basis in the text.  *Cf. Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014) ("We expect Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic

---

[7] Nor does the residual clause in Subparagraph (F) capture Defendant's business.  As discussed, the examples in Subparagraph (F) are "service establishments":  a laundromat, a dry-cleaner, a bank, a barber shop, an office of an accountant or lawyer, et cetera.  42 U.S.C. § 12181(7)(F).  They offer services, not physical products.  Subparagraph (F)'s residual clause is limited, by its own plain text, to "other service establishments" of like kind—not retailers of physical goods.  *Id.*  Moreover, applying *ejusdem generis*, it is questionable whether Subparagraph (F)'s residual clause would extend to any remote service providers run exclusively through websites, since all of the examples before it are "tied to a physical location."  *Mejia*, 2024 WL 4350912, at *5; *see also Fischer*, 144 S. Ct. at 2184; *Hall St. Assocs. v. Mattel*, 552 U.S. 576, 586 (2008) ("[W]hen a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows.").  The same is true of the other residual clauses in Section 12181(7), as there is no dispute that those clauses are preceded entirely by examples of physical locations.  *See Winegard*, 556 F. Supp. 3d at 178; *see also Weyer*, 198 F.3d at 1114 (observing that "[a]ll the items" listed in Section 12181(7) "are actual, physical places").

and political significance.'" (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000))). Section 12181(7) was crafted to avoid indiscriminately sweeping in the entire economy. In drafting Section 12181(7), "Congress could easily have said 'all businesses operating in interstate commerce,' or referred to all 'retail' or 'service' operations." *Winegard*, 556 F. Supp. 3d at 177. Instead, Congress chose to specify the types of businesses covered by Title III— and to limit those specifications to physical places. *See id.* Plaintiff's broad reading of Section 12181(7) would violate, not serve, the intent Congress expressed by deliberately limiting Section 12181(7). *Cf. W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022) (rooting, in part, the requirement that Congress state clearly when it means to delegate a "major question" to an agency in "a practical understanding of legislative intent").

For these reasons, there is simply no place for Defendant's website anywhere in the text of Section 12181(7).

### d. The ADA's Stated Purpose Does Not Sweep Websites into Section 12181(7)

None of Plaintiff's other policy arguments justify reading websites into Section 12181(7). Plaintiff relies, as other courts do, on a provision in the "Findings and Purpose" section at the start of the ADA stating that "[i]t is the purpose of this chapter . . . to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Supreme Court has described Section 12101(b) as a "broad mandate," *PGA Tour*, 532 U.S. at 675, and the Second Circuit has instructed that it requires "the ADA [to] be broadly construed," *Noel*, 687 F.3d at 68.[8] Courts have argued that this is reason alone to read

---

[8] The Court observes that, while Section 12101(b)(1) may state a broad purpose, it does not actually instruct courts to broadly construe any provisions in the ADA—including Title III's definition of "public accommodation." The ADA does, however, instruct courts to broadly construe a *different* term within the ADA, in the very next section: "The definition of *disability* in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A) (emphasis added). This too is a signal that Plaintiff's capacious reading of Section 12181(7) is misguided. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the

websites into Section 12181(7), because an interpretation precluding internet commerce would frustrate "Congress' purpose in adopting the ADA." *Guerrero*, 2023 WL 3847402, at \*4; *see also, e.g.,* *Chalas*, 673 F. Supp. 3d at 344 (quoting 42 U.S.C. § 12101(b)(1) and holding that "[f]or this reason, . . . a stand-alone website qualifies as a place of public accommodation").

The ADA's broadly stated purpose is not a basis to depart from Section 12181(7)'s plain text. "[S]tatements of purpose . . . by their nature 'cannot override [a statute's] operative language.'" *Sturgeon*, 587 U.S. at 57 (quoting A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 220 (2012)) (alteration in original); *see also Gozlon-Perez v. United States*, 498 U.S. 395, 407 (1991) ("A specific provision [in a statute] controls over one of more general application."). And a broadly construed statute must still be construed according to its terms. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (supplying "absent provisions" to a statute is not "a construction of a statute, but, in effect, an enlargement of it by the Court" (quoting *Nichols v. United States*, 578 U.S. 104, 110 (2016))). "Our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 135 (2015) (internal quotation marks and citation omitted).

As discussed, the limitations in Section 12181(7)'s definition of "public accommodation" were "obviously deliberate." *Winegard*, 556 F. Supp. 3d at 177. If any business in interstate commerce could qualify as a "public accommodation," then Section 12181(7) would not be a list. And if remote operations could qualify, then the list would not be comprised nigh exclusively of physical locations. *See, e.g.,* *Ford*, 145 F.3d at 614. Even if Congress did not contemplate websites when it enacted the ADA in 1990, "there were countless other types of businesses operating outside of brick-and-mortar premises" that Congress could have written into Title III. *See generally Winegard*,

same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)).

556 F. Supp. 3d at 177–78 (collecting examples, including the Sears Roebuck catalog, J. Crew's catalog-only retail business, and Columbia House's mail-order vinyl records operation). Accordingly, to read websites into Section 12181(7) would be to add a new provision to its list. Even a broad construal of Section 12181(7) does not permit this result. *Rotkiske*, 589 U.S. at 14 ("It is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts." (internal quotations and alterations omitted)).

Nor does the plain meaning of Title III produce "absurd results." Opp. at 18. Plaintiff argues that excluding websites from Title III "would produce absurd results" because it "ignore[s] the reality" that "disabled persons . . . want and need access to the growing number of online-only providers of goods and services." *Id.* (quoting *Chalas*, 673 F. Supp. at 344); *see also Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 572 (D. Vt. 2015) (citing *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 386, 372 (2d Cir. 2006) (noting statutes "should be interpreted in a way that avoids absurd results")).[9] Several courts in this Circuit, again relying on the First Circuit's opinion in *Carparts*, have come to similar conclusions. *E.g.*, *Scribd*, 97 F.Supp. 3d at 572; *Guerrero*, 2023 WL 3847402, at *3–*4 ("[I]t would be an anomalous result for disabled people to be barred from accessing the growing online-only providers of goods and services." (quotation omitted)). But "a statute is not 'absurd' merely because it produces results that a court or litigant finds anomalous or perhaps unwise." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019). "To the contrary, courts should look beyond a statute's text under the canon against absurdity only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear

---

[9] Some district courts have argued that requiring a website to have a nexus to a physical business would yield absurd results, because a store might have different legal obligations to customers depending on whether the customers engage at its physical location or online. *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 397 (E.D.N.Y. 2017). There is no such threat of inconsistency here, as Defendant has no physical stores. FAC ¶ 4–5.

as to be obvious to most anyone." *Id.* at 705–06 (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 517 (2d Cir. 2017)) (quotation marks omitted).  The opposite is true here.  Four circuit courts of appeal—the majority of the circuits to address this issue—have concluded that places of public accommodation are physical places under Title III.  *See supra* III.B.  Two have specifically held that standalone websites are thus not places of public accommodation subject to suit under Title III.  *Gil*, 993 F.3d at 1276–77; *Robles*, 913 F.3d at 904.  The "alleged absurdity" of excluding standalone websites was not obvious to those courts, and it is not obvious to this one, for the reasons just discussed.  *See Gibbons*, 919 F.3d at 706.

For these reasons, the Court finds that the "general purposes of the [ADA] . . . cannot justify a departure from the plain text of the statute."  *Id.* at 705; *see also E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 508–09 (2014) ("[A] reviewing court's task is to apply the text of the statute, not to improve upon it." (cleaned up)).  Under the ADA's plain text, only physical places are subject to suit under Title III.  Defendant is an online-only retailer that has no physical business open to the public.  Accordingly, Defendant's motion to dismiss plaintiff's ADA claim under Rule 12(b)(6) is granted.

## IV.   REMAINING CLAIMS

Plaintiff's claim for declaratory relief under Title III is dismissed for the same reasons as its direct claim under Title III.  *See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) (dismissing claim for declaratory relief where direct claim "will necessarily settle the issues for which the declaratory judgment is sought" (internal quotation marks and citation omitted)).

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims under the NYSHRL, NYSCRL, and NYCHRL.  28 U.S.C. § 1367(c); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004)

(noting that "[t]he exercise of supplemental jurisdiction is left to the discretion of the district court," and that "[i]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well" (internal quotation marks and citations omitted)).  The Court does not have subject-matter jurisdiction over Plaintiff's state-law claims because Plaintiff has not pleaded the amount in controversy required to confer diversity jurisdiction.  In diversity cases, the "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).  Plaintiff has not met this burden.  The FAC does not purport to quantify Plaintiff's damages other than by seeking "compensatory damages of five hundred dollars per instance" of Defendant's alleged violations of the NYCRL.  FAC ¶ 96.  This bare allegation does support a conclusion that Plaintiff's alleged harm—the inability on three occasions to access Defendant's website and buy tee shirts—adds up to the amount in controversy required for a diversity claim.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (observing that 28 U.S.C. § 1332 requires the matter in controversy to exceed $75,000 in ordinary cases, and $5,000,000 "[i]n class actions for which the requirement of diversity of citizenship is relaxed").

Accordingly, Plaintiff's declaratory-judgment and state-law claims are dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has standing to bring his claim against Defendant under Title III of the ADA.  Defendant's Rule 12(b)(1) motion to dismiss is therefore DENIED.

On the other hand, the Court finds that Plaintiff has failed to state a claim under Title III of the ADA because Defendant's standalone website is not a "place of public accommodation" subject

to Title III's protections.  Defendant's Rule 12(b)(6) motion to dismiss is therefore GRANTED.

Plaintiff's claim under the ADA is dismissed with prejudice.  Plaintiff's claims under the NYSHRL,

NYSCRL, and NYCHRL are dismissed without prejudice.

      The Clerk of Court is directed to enter judgment for Defendant, to terminate all pending

motions, and to close this case.

      SO ORDERED.

Dated:  October 16, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge